## S03A0395. THE STATE v. TYE.
(580 SE2d 528)

CARLEY, Justice.

Stephanie Black was stabbed to death in her home. Police canvassed the neighborhood, attempting to locate witnesses. Appellant, Clarence Tye, lived next door to the victim, and was standing on his porch when an investigator approached to question him. The two were joined by a police photographer. At some point, Tye admitted that he had an intimate relationship with the victim. His shoes and the lower portion of his pants were stained with what he explained to be blood from an injury to his finger sustained while restraining a leashed dog. When asked to surrender the shoes, Tye agreed. Testing

---

showed that the stains were blood from both Tye and Ms. Black. He was arrested and charged with murder.

The defense moved to suppress the evidence of the victim's blood. The trial court conducted a hearing, at the conclusion of which it expressed the intent to deny the motion,

> based on the fact that the shoes were in plain view, they were immediately apparent, the blood on the shoes from the photograph was immediately apparent and the officer was in a location where he was authorized to be. He was . . . on the defendant's porch and not in his house. Also on the basis of the consent given by the defendant.

No written order denying the motion was signed or filed. Almost two years later, however, the trial court entered a written order *granting* the motion. The order did not expressly address the plain view doctrine, and was based instead upon the trial court's conclusion that the State failed to prove that Tye voluntarily consented to the surrender of his shoes. The State appealed to the Court of Appeals, and that Court correctly transferred the case to us in accordance with *State v. Thornton*, 253 Ga. 524 (1) (322 SE2d 711) (1984).

1. When relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances. *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997). Application of the totality of the circumstances test requires consideration of several factors, including

> the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. [Cit.]

*Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982).

The trial court cited *State v. Norrington*, 203 Ga. App. 574 (417 SE2d 203) (1992) as the authority for its ruling. The State urges that reliance on that case is misplaced, because it provides that a failure to warn, standing alone, mandates the grant of a motion to suppress. If *Norrington* did establish such a per se test for suppression, it would be erroneous. " 'While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.' [Cit.]" *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996). "Instead, . . . the totality of the circumstances must control,

without giving extra weight to the absence of this type of warning. [Cits.]" *United States v. Drayton*, 536 U. S. 194, 207 (II) (122 SC 2105, 153 LE2d 242) (2002).

However, the State mischaracterizes the *Norrington* decision, which "held only that the trial court is authorized to consider the absence of any attempt to advise the accused of his right not to consent as one among many factors. [Cit.]" *Martinez v. State*, 239 Ga. App. 662, 663 (522 SE2d 53) (1999). A review of the record shows that, consistent with *Norrington*, the trial court applied the totality of the circumstances test and gave no single factor more weight than any other. According to the order granting the motion to suppress, the State failed to meet its evidentiary burden based upon Tye's mental incapacity, his apparent perception that he was compelled to accede to the investigator's request, the number of police on the scene *and* the lack of an express warning that he did not have to surrender his shoes. Accordingly, we must first decide whether the totality of these enumerated circumstances authorized the trial court's finding that Tye did not voluntarily consent to the surrender of his shoes.

2. Tye has a low I.Q. Compare *Raulerson v. State*, supra at 626 (2) (a). "The traditional definition of voluntariness . . . has always taken into account evidence of . . . low intelligence . . . . [Cits.]" *Schneckloth v. Bustamonte*, 412 U. S. 218, 248 (II) (D) (93 SC 2041, 36 LE2d 854) (1973). It is a circumstance which bears on the accused's susceptibility to suggestion and intimidation. See *State v. Osborne*, 174 Ga. App. 521 (330 SE2d 447) (1985) (voluntariness of statement). Here, Tye's predisposition to comply with the requests of authority figures is implicit in his testimony that he surrendered the shoes because a police officer asked him to do so.

Moreover, "mental condition is surely relevant to an individual's susceptibility to police coercion. . . ." *Colorado v. Connelly*, 479 U. S. 157, 165 (II) (107 SC 515, 93 LE2d 473) (1986) (voluntariness of statement). The interview with Tye did not take place in a formal custodial setting, and there is no evidence that the investigator or photographer was overtly intimidating. However, the coercion need not be express. " 'Whether . . . an apparent consent was in fact voluntarily given or was in submission to an express or *implied assertion of authority*, is a question of fact to be determined in the light of all the circumstances.' [Cit.]" (Emphasis supplied.) *Schneckloth v. Bustamonte*, supra at 221 (I). The interview occurred next door to the scene of a murder which was under active investigation and, at the time of questioning, Tye apparently was aware that there were numerous other policemen in the immediate vicinity. Although the presence of a large number of officers is not per se coercive, it is a factor to consider as part of the totality of the circumstances. 3 LaFave, Search and Seizure, § 8.2 (b), p. 644 (3d ed. 1996). It can be especially

relevant where, as here, the accused suffers from a mental deficiency, since "courts are less likely to find effective consent when the individual was immature and impressionable, as compared to those cases in which the person giving consent is more mature. [Cits.]" 3 LaFave, supra at § 8.2 (e), p. 667.

An appellate court "must construe the evidence most favorably to the upholding of the trial court's findings and judgment. [Cit.]" *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Based upon Tye's testimony, his mental condition, the conditions under which he was interviewed *and* the absence of any express warning of the right to refuse to comply, the trial court was authorized to find that surrender of the shoes was the product of his belief that he had no choice but to accede to the investigator's request. See *State v. Westmoreland*, 204 Ga. App. 312, 314 (2) (418 SE2d 822) (1992). Because the trial court's factual findings are not clearly erroneous, this Court must accept them. *Tate v. State*, supra at 54 (1). Those findings support the legal conclusion that the State did not meet its burden of proof, since a showing of mere acquiescence in an officer's authority will not demonstrate the accused's voluntary consensual compliance with the request made of him. *State v. Westmoreland*, supra at 313 (2).

3. Although the plain view doctrine was not specifically addressed in the trial court's order, the State urges we can consider that exception to the warrant requirement as an alternative ground for reversing the grant of the motion to suppress.

"Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. [Cits.]" *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (summary judgment). Notwithstanding the written order's lack of an express reference to the plain view principle, the record clearly shows that the issue was raised below. In fact, plain view was the primary basis for the trial court's oral pronouncement that it would not suppress the evidence, pursuant to which ruling the prosecution continued unabated for almost two years until the entry of the written order granting the motion to suppress on the basis of lack of consent. Under these circumstances, the written order must be construed to be the implicit rejection of the applicability of the plain view exception which the trial court had originally considered to be a valid basis for admitting the evidence. Because the issue was raised and ruled on below, it is a proper matter for consideration on appeal. Compare *Milton v. State*, 252 Ga. App. 149, 150 (555 SE2d 818) (2001).

Under the plain view doctrine,

the officer collecting the evidence must not have violated the Fourth Amendment in arriving at the place from which he or she sees the evidence. [Cit.] Moreover, the incriminating

nature of the object must be " 'immediately apparent.' " [Cit.] This requirement means that the officer must have probable cause "to believe that the item in question is evidence of a crime or is contraband." [Cit.]

*Moss v. State*, 275 Ga. 96, 104 (14) (561 SE2d 382) (2002). As the trial court originally concluded, questioning Tye on his own porch in connection with a murder investigation did not violate his constitutional rights. *Gilreath v. State*, 247 Ga. 814, 819 (1) (279 SE2d 650) (1981); *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997); *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989). Thus, the investigator and photographer were in an authorized location when they noticed the stains on Tye's clothing. He confirmed that those stains were blood. Although Tye also stated that the blood was his own, the location of the stains on his shoes and pants was somewhat inconsistent with his identification of their source as an injury to his finger. He also acknowledged an intimate relationship with Ms. Black.

Tye contends that the incriminating nature of the shoes was not immediately apparent because the police had other suspects and subsequent testing was necessary to confirm that the blood was from the murder victim. However, there is no requirement "that the officer know with certainty that the item is [evidence of a crime] at the time of the seizure, only that there be probable cause to believe that this is the case. [Cit.]" *Whittington v. State*, 165 Ga. App. 763, 765 (302 SE2d 617) (1983). "By no means is probable cause to be equated with proof even by so much as a preponderance of evidence." *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984). "The test of probable cause ' "requires merely a probability – less than a certainty but more than a mere suspicion or possibility. (Cits.)" (Cit.)' [Cit.]" *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998). Based upon the totality of the circumstances, there was a probability that blood on Tye's shoes and pants was evidence of his commission of the recent murder of his neighbor. See *Moss v. State*, supra at 105-106 (14). Therefore, the shoes were subject to immediate seizure under the plain view exception to the warrant requirement. The subsequent testing confirmed the probable cause belief that the shoes were incriminating, and the blood evidence is admissible in the murder trial. Thus, the trial court erroneously granted the motion to suppress.

*Judgment reversed. All the Justices concur, except Hunstein, J., who concurs in Divisions 1 and 3 and in the judgment.*

DECIDED MAY 5, 2003.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellant.
*Elizabeth L. Markowitz*, for appellee.