A07A2363. THE STATE v. STANFIELD.
(658 SE2d 837)

ADAMS, Judge.

The appellee, Wesley Brian Stanfield, was indicted for the offenses of rape, false imprisonment and child molestation.[1] At the time the offenses allegedly occurred, Stanfield was employed as a deputy

---

[1] The false imprisonment and child molestation charges were subsequently dismissed based on the running of the applicable statutes of limitation.

by the Sumter County Sheriff's Department. Prior to trial, Stanfield moved to suppress his statements made to an agent of the Georgia Bureau of Investigation on the basis that the statements were involuntarily made because he feared losing his law enforcement job and he was coerced by the law enforcement officer who obtained the statement. The trial court granted Stanfield's motion, and the State filed this appeal pursuant to OCGA § 5-7-1.

1. At the outset we address the State's right to bring this appeal. Stanfield has moved to dismiss the State's appeal, asserting that the exclusion of a defendant's statement on voluntariness grounds is not within the scope of OCGA § 5-7-1 (a) (4).[2] We disagree. "Even under a strict construction of OCGA § 5-7-1 (a) (4), the State has a direct right of appeal where the trial court grants a pre-trial motion to exclude evidence on the ground that it was obtained illegally." (Citation omitted.) *Anderson v. State*, 267 Ga. 116, 117 (1) (475 SE2d 629) (1996). An appeal involving the exclusion of a statement on voluntariness grounds is no exception to this rule. See, e.g., *State v. Morrell*, 281 Ga. 152 (2) (635 SE2d 716) (2006).

2. "In reviewing a trial court's determination regarding whether a statement is voluntary, we defer to the trial court's findings of fact unless clearly erroneous, but we review de novo the trial court's application of the law to [the] undisputed facts." *State v. Aiken*, 282 Ga. 132, 136 (2), n. 21 (646 SE2d 222) (2007). Applying the "totality of the circumstances" test recently adopted by our Supreme Court in *Aiken* for determining whether the statements that a public employee makes during an investigation into his activities are voluntary, we hold that the trial court properly excluded Stanfield's statement. See *Garrity v. New Jersey*, 385 U. S. 493 (87 SC 616, 17 LE2d 562) (1967).

In applying that test,

> [f]actors that a court may consider include . . . whether the State actor made an overt threat to the defendant of the loss of his job if he did not speak with investigators or whether a statute, rule, or ordinance of which the defendant was aware provided that the defendant would lose his job for failing to answer questions. If no express threat is present, the court

---

[2] That section provides:
An appeal may be taken by and on behalf of the State of Georgia from the superior courts, state courts, City Court of Atlanta, and juvenile courts and such other courts from which a direct appeal is authorized to the Court of Appeals of Georgia and the Supreme Court of Georgia in criminal cases and adjudication of delinquency cases in the following instances: . . . (4) From an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first.

may examine whether the defendant subjectively believed that he could lose his job for failing to cooperate and whether, if so, that belief was reasonable given the State action involved. In determining whether the defendant's belief was objectively reasonable, the court may examine whether the defendant was aware of any statutes, ordinances, manuals, or policies that required cooperation and provided generally, without specifying a penalty, that an employee could be subject to discipline for failing to cooperate. The court may also consider whether the investigator implicitly communicated any threat of dismissal either in written or oral form; whether, before the interrogation began, the defendant was told he was free to leave at any time; and whether the defendant was told he had the right to have a lawyer present. A trial court, of course, is free to consider any other factor that it determines is relevant to the determination of voluntariness.

(Footnotes omitted.) *State v. Aiken*, 282 Ga. at 135-136 (2).

The trial court in this case found that Stanfield had a subjective belief that he would be terminated if he did not cooperate with the GBI agent conducting the investigation. The court found that Sheriff Pete Smith confirmed that his policies and procedures required Stanfield to cooperate with the investigation and that he would be terminated if he did not give the statements as requested. Thus, the trial court concluded that Stanfield's subjective belief that he would be terminated was objectively reasonable in light of the state's action in implementing the policies and requiring his cooperation. The State concedes that Stanfield had a subjective belief that he would be fired if he did not cooperate, but argues that his belief was not objectively reasonable. The facts support the trial court's decision.

The policies referred to by the trial court were embodied in a policies and procedures manual promulgated by Sheriff Smith when he took office in January 2005. The manual was distributed to all deputies, including Stanfield. Rule of Conduct 32 in the manual, which on its face applies to internal not external investigations, provided: "Employees are to cooperate with all internal investigations in accordance with the provisions outlined in the Internal Investigations policy. Failure to cooperate with any internal investigation will result in immediate termination."

Sheriff Smith testified that Rule 32 could, and as a "general rule" did, apply to investigations other than internal investigations. Sheriff Smith also testified that it was accurate to characterize the investigation against Stanfield as both an external investigation in terms of whether he committed a crime and an internal investigation in the sense that it alleged misconduct on the part of a deputy. And

Smith said that if Stanfield had refused to cooperate, he could have been immediately terminated in accordance with the policy and procedures set forth in the manual. The investigating GBI agent also testified that he was aware that the sheriff department's policies and procedures required Stanfield to cooperate with the investigation or face termination.

Stanfield testified that he was on duty when the dispatcher notified him to contact the GBI office because one of their agents wanted to speak with him. Stanfield testified the agent told him he wanted to meet with him that afternoon but would not tell him what he wanted to speak to him about. Stanfield testified that he realized he was the subject of a criminal investigation once the questioning began, and at that point he believed that he could be terminated under the policies and procedures manual if he refused to answer the agent's questions. Stanfield testified that the manual had been given to him when Sheriff Smith took office and that he had read the manual at that time. According to Stanfield, the sheriff did not speak to him before he made his statements to the investigating agent, but he knew what was in the policies and procedures manual and believed he would be terminated if he had refused to answer the agent's questions or had invoked his right to counsel.

The State, however, points to the following circumstances in support of its argument that Stanfield's belief that he would be terminated was not objectively reasonable: Stanfield was not told before he was interviewed that he would be fired if he did not give a statement; he was not reminded of the policy stated in the manual before or during the interview; he was not ordered by anyone at the sheriff's department to go to the interview; no one at the sheriff's department spoke to him about the investigation *prior* to the interview; and the agent told him before each interview that he did not have to stay, that he did not have to speak with the agent and that he was free to leave and go about his business anytime he wanted. The State also points to the fact that Stanfield believed he was being questioned as part of a criminal investigation, not an internal affairs investigation.

As the State concedes, Stanfield clearly had a subjective belief that he would be terminated according to the policy if he did not answer the investigator's questions. Even though that policy on its face did not apply to criminal investigations, we conclude, considering the totality of the circumstances, that Stanfield's belief was objectively reasonable. Although the investigating agent told Stanfield he did not have to talk to him and was free to leave, the record shows that the investigating agent believed there was a departmental policy that required Stanfield to cooperate with him. Moreover, the sheriff who promulgated that policy testified that it was generally

applicable to all investigations and that Stanfield could have faced termination pursuant to the policy if he did not answer the agent's question. Thus, both the agent who questioned Stanfield and Stanfield's boss believed that the policy required Stanfield to answer the agent's questions. That Stanfield would interpret the policy in a like manner is objectively reasonable under these circumstances. Accordingly, we find that the trial court correctly ruled that Stanfield's statements were coerced and that the State, therefore, could not use those statements at trial.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 5, 2008.

*Cecilia M. Cooper, District Attorney*, for appellant.
*James N. Finkelstein*, for appellee.