HUNSTEIN, Presiding Justice.
 

 The instant appeals arise out of a dispute involving the finances of and control over Macedonia Baptist Church of Atlanta, an approximately 200-member church in Southwest Atlanta. Following a hearing held on April 24, 2007, the trial court issued a permanent injunction and other extraordinary relief against Scottie Cousins, Alan Moon, and their corporate co-defendants which, inter alia,
 

 **571
 

 prohibited them from transacting in church property or assets and voided certain transactions consummated by and among these defendants related to the refinancing of church property. The trial court also summarily held Cousins in criminal contempt for giving false testimony at the injunction hearing and imposed a 20-day term of confinement therefor. For the reasons set forth below, we find that the trial court abused its discretion in the conduct of the hearing, and we therefore reverse.
 

 In late 2006, Cousins, a mortgage broker, joined Macedonia and was hired as its music director.
 
 [1]
 
 Cousins began discussing with Moon, chairman of the church's Board of Deacons, the possibility of assisting Macedonia in refinancing its mortgage, which had fallen into arrears. Over the course of the next several months, Cousins and Moon - who claim to have had authorization from the church's pastor - refinanced the mortgage by obtaining a new loan from LIB Properties, Ltd. The proceeds from the loan, which was almost double the remaining balance on the original mortgage, were used to pay off the mortgage and past-due property taxes owed by Macedonia, leaving, after closing costs, a balance of approximately $47,000, the disposition of which is the subject of dispute.
 

 The church membership learned of the loan transaction and various related transactions consummated by Cousins and Moon, ostensibly on behalf of the church,
 
 [2]
 
 when, in
 
 *535
 
 March 2007, Cousins and Moon attempted to terminate Macedonia's pastor and install Cousins as its new pastor, and changed the locks to the church building. Shortly thereafter, Macedonia filed a complaint in Fulton County Superior Court against Cousins, Moon, LIB Properties, and the other corporate defendants
 
 [3]
 
 seeking temporary and permanent injunctive relief, an accounting and other equitable relief, and damages. An ex parte temporary restraining order was issued on that same day.
 

 On April 24, 2007, the court held a hearing to determine whether to continue the injunction. Counsel appeared on behalf of Macedonia
 

 **572
 

 and on behalf of all the defendants, who were represented jointly, except LIB Properties, which did not appear. In response to background questions posed by the trial judge, both attorneys indicated that they had various witnesses available to testify to the relevant facts. However, ultimately, none of the parties called any witnesses, nor did they tender any documentary evidence. Instead, the totality of the "evidence" rendered at the hearing was elicited by the trial judge himself, as follows.
 

 First, the judge solicited the opinions of church members in the audience at the hearing, none of whom was placed under oath and many of whom are not even identified by name in the record, regarding whether they wanted Cousins to "run the church." Then, after further questioning of the parties' counsel, the judge took a recess during which he or his staff apparently contacted both the attorney who closed the loan transaction and the bank where Cousins deposited the loan proceeds in order to procure copies of various documents related to the closing and the disposition of the loan proceeds.
 

 When the hearing resumed, the judge called Cousins to the stand and proceeded to question him, using the bank documents, regarding the loan and related transactions and the disposition of the loan proceeds. After Cousins testified that he had put the loan proceeds into a bank certificate of deposit for the church's benefit, the judge called another recess and contacted the bank. When back on the record, the following colloquy ensued:
 

 THE COURT: ... Peoples Community National Bank in Bremen says that $40,000 was deposited into [a specified account] in the name of Scottie L. Cousins on April 5, 2007.
 

 THE WITNESS: That's correct.
 

 THE COURT: All right. Well, how is that buying a certificate of deposit when it goes into your personal bank account?
 

 THE WITNESS: Forty thousand went into a savings account. Got a CD for $36,000 -
 

 THE COURT: That's not what they said it was. They told me it was a checking account. That $40,000 was deposited on April 5th, 2007, and that the account has very little to no money in it now.
 

 THE WITNESS: I have no savings account. I mean, a checking account. It was a savings account. $40,000 deposited in it. A CD for $36,500. A savings account -
 

 **573
 

 * * *
 

 THE COURT: So all of those CDs are for the benefit of Macedonia Baptist Church of Atlanta Incorporated -
 

 THE WITNESS: Yes.
 

 THE COURT: - At the Peoples Community National Bank of Bremen?
 

 THE WITNESS: Yes.
 

 THE COURT: Well would it surprise you they told me they have absolutely no banking relationship with an entity known as Macedonia Church?
 

 THE WITNESS: Yes.
 

 THE COURT: Would that surprise you?
 

 THE WITNESS: I opened the accounts in my personal name, yes.
 

 * * *
 

 *536
 
 THE COURT: So if they told me that you didn't have any certificate of deposits [sic] in your name either, would that shock you?
 

 At this point, the record reflects that representatives from the District Attorney's office, apparently summoned by the judge or his staff, entered the courtroom, whereupon defendants' counsel advised Cousins not to testify further. The judge then announced that he was holding Cousins in criminal contempt for committing perjury.
 

 After briefly examining the closing attorney, whom the judge had also summoned to appear, the judge concluded the hearing. Without offering any of the parties the opportunity to make argument, call their witnesses, or present any evidence, the judge declared that "Mr. Cousins has stolen $47,000 from the church," ordered Cousins jailed for 20 days for contempt, and issued a permanent injunction and other relief, all of which were memorialized in written orders within two days of the hearing. All of the parties have since appealed.
 

 1. The trial judge's conduct of the injunction hearing was clearly improper.
 

 "The constitution of this state guarantees to all persons due process of law and unfettered access to the courts of this state. [Cit.] These fundamental constitutional rights require that every party to a lawsuit ... be afforded the opportunity to be heard and to present his claim or defense, i.e., to have his day in court. [Cits.]" [Cit.]
 

 **574
 

 Morrow v. Vineville United Methodist Church,
 

 227 Ga.App. 313
 
 , 316(1),
 
 489 S.E.2d 310
 
 (1997). See also Ga. Const. of 1983, Art. I, Sec. I, Pars. I, XII. Integral to these rights is the ability to present witnesses and other lawful evidence; thus, limitations imposed by a trial judge that "prevent[ ] a full and meaningful presentation of the merits of the case" mandate reversal.
 
 Newton Commonwealth Property v. G + H Montage GmbH,
 

 261 Ga. 269
 
 , 270,
 
 404 S.E.2d 551
 
 (1991). In this case, Cousins and the other defendants who appeared at the hearing (hereinafter, the "Cousins Defendants"), despite being prepared to offer testimony by several witnesses and documentary evidence in support of their position, were never afforded the opportunity to offer evidence, give argument, or otherwise present their cases. In issuing a ruling without first allowing the Cousins Defendants to be heard, the trial judge violated their rights to due process and access to the courts. See
 
 Newton,
 
 supra,
 
 261 Ga. at 270
 
 ,
 
 404 S.E.2d 551
 
 (reversing judgment where court imposed limits on filing of motions and length of presentation of parties' cases and witness testimony);
 
 Julian v. State,
 

 134 Ga.App. 592
 
 (2),
 
 215 S.E.2d 496
 
 (1975) (reversing judgment where trial court limited defendant's presentation of character witnesses).
 

 In addition, by attempting to himself procure evidence and elicit testimony in the case, the trial judge stepped beyond the role of arbiter and into that of advocate. See
 
 Paul v. State,
 

 272 Ga. 845
 
 , 846(1),
 
 537 S.E.2d 58
 
 (2000) (conviction reversed where judge "took a prosecutorial role in the trial of the case"). Indeed, in initiating out-of-court contacts with the involved banks and other witnesses, on whose various hearsay statements he apparently relied in making his findings, the judge also failed to heed this Court's admonition that "judges must scrupulously avoid ex parte communications."
 
 Ivey v. Ivey,
 

 264 Ga. 435
 
 , 438(3),
 
 445 S.E.2d 258
 
 (1994). In so doing, the judge "`jeopardized [the rights of the Cousins Defendants by] abandon[ing] the tried and proven court procedure of admitting only relevant evidence and producing witnesses who are subject to cross-examination.'" (Citation omitted.)
 
 Arnau v. Arnau,
 

 207 Ga.App. 696
 
 , 696(1),
 
 429 S.E.2d 116
 
 (1993) (reversing due to court's ex parte communications with court-appointed expert).
 

 In short, the improprieties in the conduct of the hearing effectively deprived the Cousins Defendants of their right to be heard before a neutral arbiter and thus mandate reversal of the entirety of the injunctive and extraordinary relief awarded in this case.
 
 [4]
 

 **575
 

 *537
 
 2. Nor can the trial court's contempt adjudication stand. Though a court clearly has the authority to hold a party summarily in contempt when necessary to preserve order in the courtroom, even such summary contempt power requires that the contemnor be "afford[ed] ... the opportunity to speak in his or her own behalf."
 
 Dowdy v. Palmour,
 

 251 Ga. 135
 
 , 142(2),
 
 304 S.E.2d 52
 
 (1983). Accord
 
 Taylor v. Hayes,
 

 418 U.S. 488
 
 , 498(II),
 
 94 S.Ct. 2697
 
 ,
 
 41 L.Ed.2d 897
 
 (1974) ("[e]ven where summary punishment for contempt has been imposed during trial, `the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' [Cit.]"). Here, Cousins was given no opportunity to respond to or defend himself against the trial judge's determination that his testimony was untruthful. Equally disturbing is the fact that the perjury finding was premised at least in part on unsworn statements, unauthenticated bank documents, and other unreliable "evidence" improperly obtained by the judge in an ex parte manner. Criminal contempt is a crime in the ordinary sense, requiring proof of the elements of the alleged contempt - here, perjury - beyond a reasonable doubt.
 
 In re Jefferson,
 

 283 Ga. 216
 
 , 220,
 
 657 S.E.2d 830
 
 (2008);
 
 Garland v. State,
 

 253 Ga. 789
 
 (1),
 
 325 S.E.2d 131
 
 (1985). Given the infirmities of the "evidence" used to support the finding of perjury, we cannot conclude that this finding was established to the requisite quantum of proof. Accordingly, the trial court's adjudication of contempt is hereby reversed.
 

 Judgment reversed.
 

 All the Justices concur.
 

 Given the dearth of sworn testimony adduced at the hearing and the preliminary stage at which the proceedings currently stand - indeed, only one of the five defendants has even filed an answer herein - the facts recited above should not be viewed as having been conclusively established. See
 
 Daiss v. Bennett,
 

 286 Ga.App. 108
 
 (1),
 
 648 S.E.2d 462
 
 (2007) (law of the case rule does not apply where evidentiary posture of case in trial court changes subsequent to appellate decision).
 

 These other transactions included "re-incorporating" the church, which had previously been incorporated as a Georgia non-profit but which was administratively dissolved in 2005 for failure to pay required fees, and executing a security deed transferring church property from the church as sole owner to the church and Cousins jointly.
 

 These other corporate defendants are SLC Properties, a mortgage brokerage firm of which Cousins apparently is CEO, and Macedonia Baptist Church, Inc., the entity resulting from the "re-incorporation" by Cousins and Moon.
 

 Having found a denial of the parties' constitutional rights, we need not address the other apparent defects in the hearing, such as the elicitation of unsworn and out of court statements, see OCGA §§ 9-11-43(a), (b) and 24-9-60 (oath or affirmation required for all testimony); consideration of hearsay not admissible under any pertinent exception, see OCGA § 24-3-1 et seq., and granting of permanent injunctive relief at a temporary hearing. See
 
 Ward v. Process Control Corp.,
 

 247 Ga. 583
 
 (3),
 
 277 S.E.2d 671
 
 (1981). Likewise, because we have concluded that the injunction and other extraordinary relief must be reversed in toto, we need not address the various arguments advanced by certain of the parties challenging specific aspects of the relief awarded.