### S09A1402. THE STATE v. LYNCH.
(686 SE2d 244)

CARLEY, Presiding Justice.

After Kory Gore was stabbed to death in DeKalb County and his vehicle taken, law enforcement officers in Nash County, North Carolina spotted the vehicle being driven by Patrick Lynch, and a high-speed chase ensued. Lynch eventually left the vehicle and fled. The DeKalb County Police Department was notified, and Detectives Kevin Farmer and Shane Cheek traveled to Nash County to investigate. After a brief manhunt, Lynch was found, taken into custody, and transported to the Nash County Sheriff's Department. He was interviewed there by the DeKalb County detectives, and gave them an inculpatory statement.

Lynch was charged with malice murder, felony murder, aggravated assault, and theft by taking. At pre-trial hearings, during which Lynch and Detective Cheek testified, the trial court denied the State's motion to present similar transaction evidence, suppressed

Lynch's pre-trial statement on voluntariness grounds, granted his motion to suppress fingerprint evidence, and denied the State's motion to reconsider and reopen the evidence at the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). In extensive oral comments, the trial court found that the conduct of Nash County officers prior to the interview by the DeKalb County detectives included beating, use of a taser, removal of Lynch's clothes, and withholding of medical attention, constituted duress and coercion, and caused Lynch to give a statement in order to leave Nash County and obtain medical attention.

After the State requested a written order on the suppression of the fingerprint and the statement, the trial court stated that "the record speaks for itself" and never entered a written order. The State directly appeals pursuant to OCGA § 5-7-1 (a) (4) from the orders suppressing Lynch's pre-trial statement and the fingerprint evidence, although the State concedes that the latter issue is now moot. See *State v. Morrell*, 281 Ga. 152 (2) (635 SE2d 716) (2006) (State has right to appeal from order suppressing a defendant's statement); *State v. Stanfield*, 290 Ga. App. 62, 63 (1) (658 SE2d 837) (2008) (appeal involving exclusion of a statement on voluntariness grounds is no exception to OCGA § 5-7-1 (a) (4)). Even though oral orders normally cannot be appealed, the State nevertheless was authorized to bring this appeal because "the transcript affirmatively shows that the State requested the trial court to put the oral order[s] in written form and that the trial court refused to do so." *State v. Morrell*, supra at 153 (2).

1. The State contends that the trial court erred in suppressing Lynch's pre-trial statement, because it was made freely and voluntarily without hope of benefit or threat of injury. In addressing this contention, we bear in mind that a trial court's determination as to the voluntariness of a statement "after a suppression hearing must be upheld by the appellate court unless the decision is clearly erroneous. [Cit.]" *State v. Ritter*, 268 Ga. 108 (485 SE2d 492) (1997). The "appellate court 'must construe the evidence most favorably to the upholding of the trial court's findings and judgment. (Cit.)' [Cit.]" *State v. Tye*, 276 Ga. 559, 562 (2) (580 SE2d 528) (2003).

"Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. OCGA § 24-3-50." *State v. Ritter*, supra at 109 (1). "The State bears the burden of demonstrating the voluntariness of a confession by a preponderance of the evidence. [Cit.]" *State v. Ritter*, supra at 109-110 (1). In order for an incriminatory statement to be admissible pursuant to OCGA § 24-3-50, it must have been made freely and voluntarily, "" "without being induced by another by the slightest hope of benefit or remotest fear of injury." ' [Cit.]" *Mangrum v. State*, 285 Ga. 676, 677 (2) (681

SE2d 130) (2009). See also *State v. Ritter*, supra at 109 (1).

Although the trial court mentioned "hope of benefit," it repeatedly based its ruling upon a finding of coercion and duress. If that finding was authorized by the evidence, it clearly was sufficient to support exclusion of Lynch's pre-trial statement. The "remotest fear of injury" that renders an incriminating statement involuntary and inadmissible under OCGA § 24-3-50 is "physical or mental torture" or coercion by threats. *Mangrum v. State*, supra; *Wilson v. State*, 285 Ga. 224, 228 (3) (675 SE2d 11) (2009); *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). This determination must be based on the totality of the circumstances. *Wright v. State*, 285 Ga. 428, 432 (2) (677 SE2d 82) (2009). See also *Vergara v. State*, supra.

The State argues that the trial court erroneously considered events occurring after the initial interrogation when it stated that "all of that is the totality of the circumstances." However, a close examination of that portion of the transcript indicates that the trial court was summarizing its analysis to that point and was not including post-interview events, especially in light of the trial court's specific acknowledgment that those events occurred after Lynch gave his statement. That acknowledgment strengthens the presumption that the trial court considered only relevant evidence. *Welborn v. State*, 166 Ga. App. 214, 215 (303 SE2d 755) (1983). See also *Jones v. State*, 194 Ga. App. 356, 357 (1) (390 SE2d 623) (1990) (*Jackson-Denno* hearing).

The State relies on certain testimony by Detective Farmer from the preliminary hearing which, when construed in favor of the trial court's order, does not support the State's argument that the interview by the DeKalb County detectives was conducted immediately after Lynch's arrest. Moreover, that evidence was contradicted by Lynch's testimony that he was left in a cell without clothes for a couple of hours prior to the interview. Lynch also testified that he had visible injuries from being beaten and that the detectives promised that he would receive medical attention and be taken from Nash County only if he gave them a statement.

> If an officer or anyone else should testify that a confession was freely and voluntarily made, and then testify that the defendant was given a severe beating [or subjected to mental torture], but when the assault was over he freely and voluntarily confessed, no court, in our opinion, would have any trouble in reaching the conclusion that a confession thus obtained was inadmissible.

*Coker v. State*, 199 Ga. 20, 24 (2) (33 SE2d 171) (1945).

Lynch's testimony regarding statements made by North Caro-

lina officers expressing anger at him and blaming him for damage to a police car and the death of police dogs did not constitute inadmissible hearsay, as those statements were not offered to prove the truth of the facts asserted therein, but rather to show Lynch's fear of injury by the North Carolina officers. The evidence was admissible to prove Lynch's motives and conduct, which were directly relevant to the issue in the *Jackson-Denno* hearing, "and was therefore original evidence. [Cit.] The credibility or even absurdity of any such evidence is not an element which determines its admissibility, and is not a question for this [C]ourt . . . . [Cit.]" *Brown v. State*, 179 Ga. App. 280, 281 (346 SE2d 85) (1986).

Contrary to the State's remaining arguments, Lynch's testimony fully supported the trial court's findings. Those findings, as well as the court's credibility determinations, were neither inherently contradictory nor absurd.

> In a motion to suppress, " '(t)he credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The factfinder may accept part of a witness' testimony and reject another part . . . . (Cit.)' " [Cit.]

*Anderson v. State*, 267 Ga. 116, 118-119 (2) (475 SE2d 629) (1996). Moreover, a portion of Detective Cheek's testimony was successfully impeached, none of the North Carolina officers testified, and the State did not offer them as witnesses until the motion for reconsideration was filed.

"Because the trial court's factual findings are not clearly erroneous, this Court must accept them. [Cit.]" *State v. Tye*, supra. The trial court did not err

> in believing [Lynch's] testimony over that of [Cheek]. . . . [Its] factual and credibility determinations must be accepted by this Court unless clearly erroneous. [Cits.] And since the trial court's findings were supported by [Lynch's] testimony — though contradicted [in part] by other evidence — they are not clearly erroneous and must be affirmed. [Cit.]

*State v. Johnson*, 273 Ga. App. 324, 327 (615 SE2d 163) (2005).

Furthermore, we find absolutely no basis for reversal in the State's contention that prior to jury selection and in the absence of any motion to recuse, the trial court abandoned its role as a neutral, detached and unbiased arbiter primarily by engaging in extensive

debate with the prosecutor. See *Butts v. State*, 273 Ga. 760, 762 (3), fn. 4 (546 SE2d 472) (2001) ("the issue of the alleged personal bias of a trial judge must be preserved for appeal"); *Ingram v. State*, 286 Ga. App. 662, 663 (2) (650 SE2d 743) (2007); *Johnson v. State*, 250 Ga. App. 245, 246 (1) (550 SE2d 113) (2001). Compare *Cousins v. Macedonia Baptist Church of Atlanta*, 283 Ga. 570, 573 (1) (662 SE2d 533) (2008) (where trial judge did not allow the opportunity to present evidence and instead attempted to procure evidence himself).

2. The State also enumerates as error the trial court's rulings on the state's motion to present similar transaction evidence and on the motion to reconsider and reopen the evidence at the *Jackson-Denno* hearing.

Neither of these rulings is directly appealable. The similar transaction evidence was not excluded on the ground that it was obtained illegally. Compare OCGA § 5-7-1 (a) (4); *State v. Morrell*, supra at 152 (2); *State v. Stanfield*, supra. "OCGA § 5-7-1 (a) does not authorize an appeal [where, as here,] the order is the result of the exclusion of evidence based upon some general rule of evidence. [Cit.]" *Berky v. State*, 266 Ga. 28, 29 (463 SE2d 891) (1995) ("no basis for the State's appeal of an order granting a defendant's motion in limine on general evidentiary grounds. [Cits.]"). Nor is the denial of the motion for reconsideration directly appealable. *State v. White*, 282 Ga. 859, 860 (1) (655 SE2d 575) (2008).

The State relies on OCGA § 5-6-34 (d). The application of that statute to criminal appeals by the State appears to be a question of first impression. See *State v. White*, supra (even assuming that appellate review of an order denying a motion for reconsideration filed by the State was possible pursuant to OCGA § 5-6-34 (d), the statute clearly did not permit review of an order entered after the trial court was divested of jurisdiction).

OCGA § 5-6-34 (d) provides for review of all rulings that are raised on appeal and may affect the case below, only "[w]here an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section . . . ." There is a "separate and distinct statutory scheme for appeals by the State in criminal cases. The general statute governing interlocutory appeals is applicable whenever the defendant seeks review of an interlocutory order. OCGA § 5-6-34 (b) . . . ." *State v. Ware*, 282 Ga. 676, 678 (653 SE2d 21) (2007). However, where, as here, the State seeks review of interlocutory orders, the appeal is "governed by OCGA § 5-7-1 et seq." *State v. Ware*, supra.

OCGA §§ 5-7-1 (a) and 5-7-2 are counterparts of OCGA § 5-6-34 (a) and (b), and use similar language to authorize direct and interlocutory appeals, but constitute the only authority for appeals by the State in criminal cases. OCGA §§ 5-6-34 (a) ("Appeals may be

taken to the Supreme Court and the Court of Appeals from the following judgments and rulings . . . : All final judgments . . ."), (b) ("Where the trial judge in rendering an order decision, or judgment, not otherwise subject to direct appeal, . . . certifies within ten days of entry thereof that the order, decision, or judgment is of such importance to the case that immediate review should be had . . . ."), 5-7-1 (a) ("An appeal may be taken by . . . the State . . . to the Court of Appeals . . . and the Supreme Court . . . in criminal cases . . . in the following instances . . . ."), 5-7-2 ("Other than from an order, decision, or judgment sustaining a motion to suppress evidence illegally seized, in any appeal under this chapter where the order, decision, or judgment is not final, it shall be necessary that the trial judge certify within ten days of entry thereof that the order, decision, or judgment is of such importance to the case that an immediate review should be had.").

Further comparison of relevant language indicates that OCGA § 5-6-34 (d) was not intended to apply to appeals pursuant to OCGA § 5-7-1 et seq. OCGA § 5-6-34 (d) uses the same language as OCGA §§ 5-6-34 (a) and 5-7-1 (a) with regard to an appeal being "taken" when limiting its application to appeals "taken under" subsection (a), (b), or (c) of OCGA § 5-6-34. OCGA § 5-7-4 describes criminal appeals by the State as "authorized by [OCGA § 5-7-1 et seq.]" even though they are otherwise "governed by the same laws and provisions as to time and other procedures as apply to other appellants in criminal cases." We can only conclude that the General Assembly deliberately omitted from OCGA § 5-6-34 (d) appeals taken or authorized under OCGA § 5-7-1.

OCGA § 5-7-1 et seq. must be construed strictly against the State and liberally in favor of the interests of defendants. *State v. Ware*, supra at 677; *State v. Martin*, 278 Ga. 418, 419 (603 SE2d 249) (2004). Furthermore, "this Court has recognized that the State may not appeal *any* issue in a criminal case, whether by direct or [interlocutory] appeal, unless that issue is listed in OCGA § 5-7-1 . . . . [Cit.]" (Emphasis in original.) *State v. Martin*, supra. Accordingly, we hold that, where the State appeals from one or more orders listed in OCGA § 5-7-1 (a), OCGA § 5-6-34 (d) does not authorize appellate review of any other ruling in the case. We therefore cannot review the trial court's denial of the motion to allow similar transaction evidence and the motion for reconsideration.

*Judgment affirmed. All the Justices concur.*

NAHMIAS, Justice, concurring.

I join the Court's opinion in this case, as we are constrained by the record and the applicable law to reach those results. I write separately to note that the record, as it was developed below,

provides little comfort that the actual truth about Lynch's confession has been ascertained. Did Lynch voluntarily confess to the murder of Kory Gore, as DeKalb County Detective Cheek testified? If so, that would be important evidence for the jury trying to decide whether Lynch is in fact guilty of the murder. Or did a deputy U. S. Marshal and Nash County, North Carolina Sheriff's officers assault and injure Lynch, keep him naked in a holding cell for two hours, and withhold medical attention, as Lynch testified? If so, that would mean not only that his confession was coerced and inadmissible, but also that those officers committed serious and potentially criminal misconduct.

The trial court was entitled, on the record presented, to credit Lynch's testimony, and we are required, on that limited record and under the applicable standard of appellate review, to defer to that finding and affirm the suppression of Lynch's confession. But I would be much more confident that we were reaching the *factually correct* result, rather than simply the *legally correct* result, if the record contained more of the readily available and highly probative evidence on the important questions presented — the reliability of a confession to murder and the misconduct of law enforcement officers. What is missing in particular is the testimony of the officers actually involved in Lynch's arrest and subsequent detention (as Detective Cheek was not), whose conduct is at the heart of this matter.

We do not have that additional evidence before us because the prosecutor did not offer it at the *Jackson v. Denno* hearing, either in the State's initial presentation or in rebuttal, and the trial court then declined to allow the State to re-open the evidence. The prosecutor's decisions reflect some combination of being surprised by Lynch's testimony, being unprepared for an important evidentiary hearing, and — in the most significant tactical mistake — failing to offer additional evidence in rebuttal or to seek a continuance after Lynch testified.[1] The trial court's subsequent decisions not to re-open the evidence and to deny the State's formal motion for reconsideration cannot be appealed, as the Court explains.

The trial court, however, had the *discretion* to re-open the hearing, and I believe it would have been preferable for the court to have done so. Two of the Nash County officers whose conduct was at issue were actually in the courtroom when the court denied the motion for reconsideration and repeated its finding that they had "terrorized [Lynch] until the time DeKalb County got there." Yet the

---

[1] After Lynch testified, the trial court asked "Anything further from the State?" The prosecutor replied, "Just argument, your Honor."

court did not seem interested in what they would say about that issue, under oath and subject to cross-examination. Nor did the State clearly proffer for the record what the officers would say if allowed to testify. The State did offer booking photos that might — or might not — show some of the injuries that Lynch claimed, but the court did not allow the photos even to be tendered into the record.

The prosecutor's performance in this case obviously leaves much to be desired. I also recognize and reiterate that trial courts must have broad discretion to conduct evidentiary hearings and to make credibility findings, and they are not required to advise parties of their potential findings before the evidence closes or to give parties the opportunity to present additional evidence to convince the court to change its findings. That is why we are affirming the judgment in this case. But the decisions of the prosecutor and the trial court leave the record insufficient for me, and I expect for the murder victim's family, the command staff of the law enforcement agencies involved, and the people of our State, to know with confidence either that law enforcement officers engaged in serious misconduct or that a voluntary confession to murder will never be heard by a jury. That is a situation that could easily have been avoided, but regrettably was not.

DECIDED NOVEMBER 2, 2009.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellant.

*Alden W. Snead, Gerard B. Kleinrock*, for appellee.