**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 11, 2025**

# In the Court of Appeals of Georgia

A24A1325. IN RE: DOROTHY R. WILSON, PROPOSED WARD.

PADGETT, Judge.

Tami Clarke ("Clarke") and Tracy Walker ("Walker") filed a petition in probate court, seeking the appointment of Clarke as guardian and the county conservator as conservator for Dorothy Wilson ("Wilson"). After multiple hearings, the probate court entered an order denying the petition. Clarke and Walker appeal, claiming the probate court erred by denying their petition based on information not in evidence. For the reasons set forth below, we affirm.

"In reviewing an order on a petition for conservatorship or guardianship, we will not set aside the probate court's findings unless they are clearly erroneous. And where such findings are supported by any evidence, they will be upheld on appeal."

*In re Cash*, 298 Ga. App. 110, 110 (679 SE2d 124) (2009) (citation and punctuation omitted).

The record shows that, Wilson is a ninety-seven year old woman who lives at home with a live-in nurse. Wilson owns multiple properties of land that were managed by Tim Clarke ("Tim") for more than two decades. At some point, Tim introduced his wife, Clarke, to Wilson. Beginning in 2020, Clarke started to notice Wilson using a cane and moving around slowly. Clarke became alarmed in 2021 when she checked on Wilson and saw her house was filled with tripping hazards. Around this same time, Wilson nominated Clarke to be her healthcare agent. Clarke reached out to a friend who was related to Walker to clean Wilson's house. Shortly thereafter, Clarke engaged Walker, who was a nurse, to be a caretaker for Wilson and clean the home, help her with grocery shopping, and take her to medical appointments. Around February of 2022, Wilson experienced jaw pain and was diagnosed with neuralgia. She was placed on narcotics to help deal with the pain. While in the care of Walker and on narcotics, Wilson's behavior and cognitive abilities started to decline. After being weaned off the medications, her cognitive abilities improved and she was able to control what she wanted to eat and do. In July 2022, Clarke and Walker stopped

caring for Wilson. In October 2022, Wilson's attorney sent a demand letter to Tim, threatening to sue him for fraud related to his management of her properties.[1] A few weeks later, three months after they had last visited with Wilson, Clarke and Walker filed their petition for guardianship and conservatorship over Wilson. The petition claimed Wilson needed a guardian because she lacked sufficient capacity to make or communicate significant responsible decisions concerning her health or safety and the management of her property.

Over the course of three hearings, the court heard testimony from Wilson, her live-in nurse, one of her daughters, Walker, her estate planning attorney, her physician, Tim, and Clarke. In denying the petition, the probate court considered the fact that Tim installed cameras in Wilson's home without her consent, the fact that the petitioners filed for guardianship after a demand letter had been sent and three months after they had last seen Wilson, and two different evaluators reporting Wilson had sufficient capacity. The probate court also considered a pre-hearing conversation with Wilson.

---

[1] Wilson filed a lawsuit against Tim Clarke in the Superior Court of Fayette County that has been stayed pending the outcome of this guardianship case.

On appeal, Clarke and Walker argue the probate court erred in denying their petition for appointment of a guardian and conservator based on information that was not in evidence. We disagree. Clarke and Walker claim that under *Cousins v. Macedonia Baptist Church of Atlanta*, 283 Ga. 570, 573 (662 SE2d 533) (2008), because the information obtained in a pre-hearing conversation with Wilson was not sworn testimony, the probate court's actions are "clearly improper" and warrant reversal. In *Cousins*, the trial court did not allow the parties to call or examine witnesses but instead solicited opinions from unsworn members of the audience at the hearing, and it conducted an independent investigation into facts of the case. Id. at 572-573. That is distinguishable from the case at hand, because here, the court heard testimony from eight witnesses and did not conduct an independent investigation of the facts. It is true that before the hearing, the probate judge had a conversation with Wilson alone in her chambers. After that conversation, however, counsel for Clarke and Walker stated to the judge "I do appreciate you taking the time to speak with Ms. Wilson in chambers. And I hope that was helpful[.]" We view this statement as an express invitation to the probate judge to include her in-chambers conversation with Wilson in her consideration, and Clarke and Walker cannot now complain that she did. See *Video*

4

*Warehouse, Inc. v. Newsome*, 285 Ga. App. 786, 788 (648 SE2d 124) (2007) ("[parties] will not be heard to complain of error induced by [their] own conduct, nor to complain of errors expressly invited by [themselves].") (citation and punctuation omitted).

But even if the probate court erred in considering the pre-hearing conversation, any error is harmless. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." *Baker v. Cuthbertson*, 372 Ga. App. 753, 761 (1) (906 SE2d 764) (2024) (citation and punctuation omitted). Under OCGA § 9-11-61,

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In the probate court's final order, the judge stated that the pre-hearing conversation was weighed heavily in denying the petition. But, the other evidence significantly supports the denial. Two experts concluded Wilson did not meet the standards for

guardianship or conservatorship.[2] Wilson's live-in nurse testified that while Wilson was in Walker and Clarke's care, Wilson was over-medicated, that Clarke and Tim had set up cameras in Wilson's home and were spying on her, and that Wilson's cognitive abilities had gotten better since Clarke and Walker no longer cared for Wilson. Additionally, the evidence showed that Walker and Clarke had not seen Wilson for months before filing the petition for guardianship and that the petition was only filed after Wilson sent a demand letter to Tim. Therefore, we find that if the probate court made any error in considering the pre-hearing statement, it was harmless. See *Robinson v. State*, 265 Ga. App. 481, 482 (1) (594 SE2d 696) (2004) (finding a trial court error harmless when overwhelming evidence supported the jury's verdict and noting that the test for harmless error is whether it is "highly probable" the error contributed to the verdict).

For these reasons, we affirm the probate court's denial of Clarke and Walker's petition for guardianship and conservatorship over Wilson.

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*

---

[2] One report noted that Wilson appeared well groomed, communicative, "appropriate in her responses and [was] ambulatory with the use of a rolling walker as needed." The other report noted Wilson appeared to be alert, oriented, appropriate, and scored a 26 out of 30 on the mini-mental state exam.