669 S.E.2d 471 (2008)
In the Interest of D.T., a child.
No. A08A2251.
Court of Appeals of Georgia.
November 10, 2008.
*472 Tina Euginia Maddox, Vidalia, for Appellant.
Louie Craig Fraser, Dist. Atty., Terry F. Holland, Asst. Dist. Atty., for Appellee.
BLACKBURN, Presiding Judge.
Following a bench trial in juvenile court, D.T. appeals an adjudication of delinquency, challenging the sufficiency of the evidence and arguing that because he was promised to be taken home if he spoke to police, the juvenile court erred in admitting his statements to police as voluntary and as not induced by a hope of benefit. We hold that the evidence sufficed to sustain the adjudication in that the accomplice's testimony identifying D.T. as a perpetrator was corroborated by D.T.'s own statements to police. Because the alleged benefit promised to D.T. (being taken home) was collateral to the charges against him, such does not constitute a benefit forbidden by law, and therefore the trial court properly admitted D.T.'s statements to police. Accordingly, we affirm.
1. When reviewing the sufficiency of evidence supporting a juvenile court's adjudication, we apply the same standard of review used in criminal cases. See In the Interest of J.A.F.[1] We construe the evidence in favor of the court's adjudication and determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. Id.
So construed, the evidence shows that late one evening, a woman arrived home from work and, carrying her pocketbook, exited her car at the end of her driveway near the gate to her backyard. As she approached the gate to feed her cat, she was struck from behind and became disoriented. She came to her senses in the grass of her front yard, bleeding, bruised, and without her pocketbook. Abrasions on her arms and legs were consistent with being dragged along the driveway and ground. Shortly thereafter, D.T. (a minor) and two other young males were picked up by a female friend on a street near the crime scene; the friend saw them trying to bury a gun after they arrived home.
Within days, D.T. approached a school counselor and stated that he knew who committed the attack and robbery. The counselor placed him in contact with an officer, to whom D.T. told that the other two young men had attacked the woman and stolen her pocketbook. With D.T.'s mother's consent, a second officer asked D.T. to ride with him in a car, telling D.T. and his mother that he would bring D.T. back when he was through with him. During the ride, D.T. confessed to the second officer that after he and the other two young men had unsuccessfully tried to burglarize a nearby business while carrying a gun, they decided to walk to the woman's house to rob her, because D.T. had previously helped her unload stuff at her home and believed she was wealthy. He claimed that he only acted as the lookout while the other two young men attacked and robbed the woman. At D.T.'s request, this second officer took D.T. to the woman's house, where D.T. apologized to the woman for the threesome's having committed the crimes.
Charged with delinquency based on felony allegations of robbery, aggravated assault, and kidnapping, D.T. was tried in juvenile court, where one of his accomplices testified that D.T. personally committed the robbery, kidnapping, and aggravated assault (with the third young man) while the accomplice acted as lookout. Specifically, the accomplice stated on the stand and to police that D.T. and the third young man both struck her from behind, then jointly dragged her up the driveway and snatched her purse. Over D.T.'s objection and after a hearing, the court determined that D.T.'s own statements to police were voluntary and therefore admissible.
Finding that D.T. had committed the alleged crimes, the court adjudicated D.T. delinquent and sentenced him to confinement within a youth facility. We hold that the evidence sustained the court's finding that D.T. committed the three crimes. With regard to aggravated assault, the evidence *473 showed that D.T. struck the woman unconscious and caused her serious bodily injury. See OCGA § 16-5-21 (a)(2). With regard to robbery, the evidence showed that D.T. used force to steal the woman's pocketbook. See OCGA § 16-8-40(a)(1). And with regard to kidnapping, the evidence showed that D.T. dragged the woman down her driveway and onto her front yard. See OCGA § 16-5-40(a).
D.T. complains, however, that the evidence of his involvement in these crimes came solely from his accomplice, and that OCGA § 24-4-8 required this testimony to be corroborated. See In the Interest of J.L.[2] (OCGA § 24-4-8's requirement for corroboration applies to juvenile cases involving charges of felonies). Here, D.T. himself corroborated the accomplice's testimony. See Fowler v. State[3] ("appellant's testimony itself may furnish the corroboration"). D.T. told police that he helped plan the robbery and that he was at the scene with other two young men. Also, the female friend testified that she picked up D.T. and his companions near the crime scene. This corroboration evidence of D.T.'s involvement is sufficient. See id. It is ultimately unimportant that D.T. told police that he was only acting as the lookout, because this still placed him at the crime scene where he was acting jointly and intentionally with the other two young men, and because a lookout himself would in any case be a party to the crimes and therefore guilty of same. See Dixon v. State[4] ("[a]cting as a lookout for a person who is committing a crime authorizes a conviction for that crime"). See, e.g., In the Interest of C.L.[5]
The evidence sufficed to sustain the adjudication of delinquency.
2. Claiming his statements to police were given involuntarily, D.T. contends that the juvenile court erred in admitting those statements into evidence. D.T. does not contest that the statements met the nine-factor test for incriminating juvenile statements. See Hanifa v. State.[6] Rather, D.T. argues that the statements were involuntary under OCGA § 24-3-50 in that they were induced by the hope that he would be benefitted by being driven home once the statements were given.
It is true that OCGA § 24-3-50 renders confessions inadmissible unless they are made voluntarily, "without being induced by another by the slightest hope of benefit...." However, the next Code section qualifies the meaning of this benefit, providing that "[t]he fact that a confession has been made under... a promise of collateral benefit shall not exclude it." OCGA § 24-3-51. Interpreting these two Code sections, the Supreme Court of Georgia in White v. State[7] held that "[t]he promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." Thus, in White the promise of transferring the suspect from a nonsmoking jail to a smoking jail so that he could smoke was a "collateral benefit [that was] an insufficient hope of benefit to render [defendant's] statement inadmissible." Id. (citing OCGA § 24-3-51).
This requirementthat the promise of a benefit must relate to the charge or sentence facing the suspectcaused this Court in Smith v. State[8] to reject a defendant's claim that his confession was involuntary as induced by hope of a benefit when the alleged benefit was an officer's promise to the defendant that the officer would see about getting the defendant home once defendant made a statement. The officer's promise was a collateral benefit, as it did "not relate to either the charge or sentence [the defendant] was *474 facing, nor [did] the officer give [the defendant] a hope of a lighter sentence in return for his testimony. Accordingly, OCGA § 24-3-50 is not implicated." Id. Similarly, the statement of the second officer here that he would drive D.T. home once they were through, even if this could be construed as the promise of a benefit for D.T.'s confession, was only a collateral benefit that would not implicate the provisions of OCGA § 24-3-50.
The trial court, which held a suppression hearing on this matter, did not clearly err in finding D.T.'s statements to police were voluntary. See Gibbs v. State[9] ("[w]hen a trial judge has made a determination as to the voluntariness of a confession after a suppression hearing, such determination must be accepted by the appellate courts unless his decision is clearly erroneous").
Judgment affirmed.
MILLER and ELLINGTON, JJ., concur.
NOTES
[1] In the Interest of J.A.F., 262 Ga.App. 722, 723-724(2), 586 S.E.2d 381 (2003).
[2] In the Interest of J.L., 229 Ga.App. 447, 448(1), 494 S.E.2d 274 (1997).
[3] Fowler v. State, 171 Ga.App. 491, 492(1), 320 S.E.2d 219 (1984).
[4] Dixon v. State, 277 Ga.App. 656, 659, 627 S.E.2d 406 (2006).
[5] In the Interest of C.L., 289 Ga.App. 377, 380(1)(b), 657 S.E.2d 301 (2008).
[6] Hanifa v. State, 269 Ga. 797, 804-805(3), n. 5, 505 S.E.2d 731 (1998).
[7] White v. State, 266 Ga. 134, 135(3), 465 S.E.2d 277 (1996).
[8] Smith v. State, 269 Ga.App. 133, 140(3), 603 S.E.2d 445 (2004).
[9] Gibbs v. State, 235 Ga. 480, 483(3), 220 S.E.2d 254 (1975).