## A08A2150. INMAN v. THE STATE.
### (671 SE2d 921)

ELLINGTON, Judge.

A Whitfield County jury found Lonnie Inman guilty of aggravated sexual battery, OCGA § 16-6-22.2 (b), and three counts of child molestation, OCGA § 16-6-4 (a). Inman appeals from the order denying his motion for new trial, contending that the trial court erred in admitting into evidence his custodial statements and that the evidence adduced was insufficient to support his convictions. Finding no error, we affirm.

1. Inman contends the trial court erred in admitting his custodial statement, arguing that he did not understand his rights and

---

that he was induced into making a statement by the hope of a benefit. For Inman's "statements to be admissible, they must be voluntary." (Citation omitted.) *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). Under the provisions of OCGA § 24-3-50, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." We note that Inman's reliance on the nine-factor analysis for determining the voluntariness of his statement as set forth in *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993), is misplaced. The Supreme Court of Georgia has recently clarified that "the explicit nine-factor analysis set forth in ... *Reinhardt*[ ] applies only to the confessions of juveniles and not to those of adults." (Citations omitted.) *Vergara v. State*, 283 Ga. at 177-178 (1). Because Inman was over 18 "at the time of his statements, they are admissible if, considering the totality of the circumstances, they were made voluntarily, without being induced by hope of benefit or coerced by threats." (Citation and punctuation omitted.) Id. at 178 (1).

The record reveals that Inman, who was 58 years old at the time of his custodial interview at the Whitfield County jail, was advised of his *Miranda*[1] rights verbally and in writing. Inman testified that he knew his rights "from TV," and knew that he had the right to remain silent, that his statements could be used against him, and that he had a right to an attorney. He testified that he was not threatened and that the detectives made him no promises in exchange for his statements. The detectives testified that Inman did not appear to be under the influence of any intoxicants, that he understood his rights, and that he voluntarily signed a waiver-of-rights form, initialing each right after they were read to him. The interview lasted about 40 minutes, and Inman was not threatened or deprived of food, water, or restroom facilities. Although Inman argues in his brief that he could not have understood his rights due to his "limited mental capacity," the record shows that Inman had completed the eleventh grade, that he had worked as a babysitter, and that he could answer complex questions and recall the details of past events. There was no test evidence introduced which demonstrated that Inman had a below-average IQ or was mentally or cognitively impaired such that he was incapable of understanding his rights.

During the hearing, Inman admitted that he gave the statements recounted by the detectives. The detectives testified that Inman, who initially denied touching the female victims in any way, told them that he may have accidentally fondled one victim's chest

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

and that, while bathing another victim, he may have accidentally inserted his finger into the child's vagina. Inman told the detectives that he knew he would be found guilty and that he wanted to know if he could be sent to a mental hospital or clinic because he knew what happened to child molesters in prison. The detectives told Inman that the only thing they could do was tell the district attorney that he was cooperative "and then it would be up to the discretion of the judge and the jury as to what happened to [him]." At the end of the interview, as the detectives were leaving, Inman asked: "What's going to happen now? I need help to stop doing the things to kids that I used to do. I haven't done it in six years."

Based on the testimony given by Inman and the detectives who questioned him, the trial court found that Inman's custodial statements were freely and voluntarily made, especially given Inman's own testimony that he understood his rights and willingly waived them. "This Court will not interfere with findings of the trier of fact where, as here, there is evidence to support the factual findings." (Footnote omitted.) *Montgomery v. State*, 287 Ga. App. 382, 384 (2) (651 SE2d 491) (2007). The trial court's findings are also supported by the initialed and signed waiver of rights form. There is no evidence that the detectives offered Inman a hope of benefit. Rather, it appears Inman sought treatment in lieu of imprisonment, and that the detectives told him they could make no promises. Based on the totality of the circumstances, we cannot say the trial court erred in holding that Inman's custodial statements were voluntary under OCGA § 24-3-50. See *Mezick v. State*, 291 Ga. App. 257, 257-258 (1) (661 SE2d 635) (2008) (The defendant's alleged mental shortcomings did not render his statements inadmissible given the totality of the circumstances.). Consequently, we find no error.

2. Inman contends the evidence adduced was insufficient to support his convictions beyond a reasonable doubt.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

Inman, who was known as "Pappy," babysat several young neighborhood girls, including the victims, F. W., K. L., and A. M., during the period of time from June 1997 through December 1999 in Whitfield County. Each of the victims recounted how, while in Inman's care, he molested them.

In her videotaped statement, which was played for the jury, thirteen-year-old F. W. told how, when she was about six years old, Inman bathed her against her will and inserted his finger into her vagina. Later that same day, Inman pulled F. W.'s pants down and attempted to have intercourse with her. F. W. testified that she also witnessed Inman touch A. M.'s "rear end." F. W. testified that she was afraid to tell about the molestation because Inman threatened to kill her. Thirteen-year-old K. L. gave a videotaped statement which was played for the jury in which she recounted how, when she was about five years old, Inman tried to have sex with her. She also said that Inman, while nude, asked her to rub lotion on his body. He touched her chest and her thighs. And later, he took her to a friend's trailer and made her watch a pornographic movie while he drank beer. K. L. did not tell anyone what happened because Inman threatened to kill her. Fifteen-year-old A. M. testified that when she was about eight years old and in Inman's care, he stuck his hands down her shorts, fondled her vaginal area, and attempted to have intercourse with her.

F. W.'s mother, K. L.'s mother, and the girls' grandmother testified about the girls' outcry statements, and testified as to the dates and times the girls were in Inman's care. The grandmother testified that F. W. told her that Inman gave her a bath and touched her privates and that F. W. said her privates were "raw." She also testified that A. M. once begged not to go to Inman's house.

Finally, as recounted in greater detail in Division 1 above, Inman gave statements, which were introduced at trial, in which he admitted bathing the girls with his bare hands, once inserting his finger into F. W.'s vagina. He admitted touching and hugging the girls, and said he may have accidentally touched their chests. He also admitted that he needed help "to stop doing the things to kids that [he] used to [do,]" noting that he had not "done it in six years," that is, around the time the State alleged the molestations occurred.

The evidence adduced is sufficient to support Inman's conviction for the aggravated sexual battery of F. W. beyond a reasonable doubt. Pursuant to OCGA § 16-6-22.2 (b), "[a] person commits the offense of aggravated sexual battery when he . . . intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." Subsection (a) of the statute provides: "For the purposes of this Code section, the term 'foreign object' means any article or instrument other than the sexual organ

of a person." Inman's finger constitutes a "foreign object" for purposes of this crime. *Burke v. State*, 208 Ga. App. 446 (1) (430 SE2d 816) (1993). "Evidence that appellant's finger penetrated the sexual organ of the victim was sufficient for the jury to find beyond a reasonable doubt that appellant committed an act of aggravated sexual battery." *Johnson v. State*, 276 Ga. 57, 58 (1) (573 SE2d 362) (2002).

The evidence is also sufficient to support Inman's convictions for child molestation beyond a reasonable doubt. "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a). The evidence adduced shows that Inman pulled F. W.'s pants down and attempted to have intercourse with her; that he exposed himself to K. L., fondled her chest, and attempted to have intercourse with her; and that he fondled A. M.'s vaginal area and attempted to have intercourse with her. Further, Inman's statement that he needed help to stop doing the things to kids that he used to do reveals his guilty knowledge and is further evidence of his criminal intent and culpability. This evidence is sufficient to support Inman's convictions for child molestation beyond a reasonable doubt. See *Gibbs v. State*, 256 Ga. App. 559, 560 (568 SE2d 850) (2002) (evidence that defendant touched victim's breasts and vaginal area sufficient to support conviction of child molestation); *Siharath v. State*, 246 Ga. App. 736, 739 (2) (541 SE2d 71) (2000) ("[A] victim's testimony, without more, is sufficient to sustain a conviction for rape or child molestation.") (citations omitted).

*Judgment affirmed. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED JANUARY 7, 2009.

*Benjamin D. Goldberg*, for appellant.
*Kermit N. McManus, District Attorney, Michael R. McCarthy, Stephen E. Spencer, Assistant District Attorneys*, for appellee.