## A10A2202. THE STATE v. BROWN.
(708 SE2d 63)

DILLARD, Judge.

Harrison R. Brown, appellee, was indicted on one count each of aggravated sodomy,[1] aggravated child molestation,[2] child molestation,[3] and felony sexual battery.[4] Prior to his indictment, Brown confessed to investigators that he sexually molested the four-year-old child, but he later moved to suppress his statements on the

---

[2] See *Franklin v. State*, 230 Ga. 291, 292 (1) (196 SE2d 845) (1973) (objection that question was "highly prejudicial" too general).

[1] OCGA § 16-6-2 (a) (2).

[2] OCGA § 16-6-4 (c).

[3] OCGA § 16-6-4 (a).

[4] OCGA § 16-6-22.1.

ground that they were made involuntarily from a "hope of benefit"—namely, that he would not be charged with any of the crimes to which he confessed. Brown moved to suppress his confession, and the trial court granted his motion. For the reasons noted infra, we reverse.

The alleged victim in this case was the son of a woman who was dating Brown's brother. Allegations of molestation arose when the child told his grandmother that Brown "had sucked on his wee-wee and made it bigger." The sheriff's office asked Brown to come in for questioning, and he voluntarily complied with this request. Upon his arrival, Brown was advised of the allegations made against him, and he then had a brief meeting with a female investigator and a DFACS representative. The female investigator testified at the suppression hearing that she did not threaten Brown with arrest.

Brown was then questioned by two male investigators from the sheriff's office. Brown's gradual confession to touching the child's penis and placing it in his mouth occurred during this second interview, which was videotaped and spanned over the course of approximately two hours. This confession was initially made in a non-custodial setting. Indeed, the investigators advised Brown at the very beginning of the interview that he could leave any time he wanted, and Brown expressed his general familiarity with criminal procedure, informing the officers that he had taken criminal-justice classes in school.

The tone of the second interview was conversational, Brown was not in handcuffs, and the door to the office was unlocked. Once Brown confessed to placing his mouth on the child's penis, the investigator immediately stopped the interview, told Brown that in light of what he had just confessed he would no longer be able to leave, and then gave Brown his *Miranda*[5] rights. Although Brown volunteered that he was already aware of his *Miranda* rights, the investigator proceeded with reading those rights to him just the same. And prior to resuming any questioning, the investigator spent a considerable amount of time ensuring that Brown fully understood his *Miranda* rights and that he was willing to waive them by continuing with the interview. During this exchange, Brown tried repeatedly to discuss the incident and express remorse for his actions, but each time he did so, the investigator emphasized that he could not continue speaking to Brown unless he was first willing to waive his *Miranda* rights and sign the waiver form. Brown eventually initialed the *Miranda* waiver, thus acknowledging that he had been advised of his constitutional rights and that he, nevertheless,

---

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

was willing to continue freely speaking with the investigator. After doing so, Brown repeated his earlier admissions—i.e., that he had touched the child's penis and put it in his mouth. Brown then made similar inculpatory statements while speaking with a different investigator the following day. Thereafter, Brown was indicted for aggravated sodomy, aggravated child molestation, child molestation, and felony sexual battery. Brown moved to suppress his statements, and the trial court granted his motion. This appeal follows.

The crux of this appeal is whether Brown's confession was voluntary or whether it was instead induced by a "hope of benefit" promised by the State. At the outset, we note that incriminating statements are only admissible if "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[6] Thus, to overcome suppression, the State must show that (1) the suspect was not presented with the "slightest hope of benefit," and (2) even if a "hope of benefit" was presented to the criminal defendant by the State, the suspect's incriminating statements were not *actually induced* by this "hope of benefit," such that his or her confession was rendered involuntary as a matter of law.

In a motion to suppress hearing, the State must demonstrate voluntariness by a preponderance of the evidence,[7] and the trial court's determination must be based on the totality of the circumstances.[8] Then, in reviewing the trial court's suppression of evidence, we "must construe the evidence most favorably to . . . upholding . . . the trial court's findings and judgment."[9] Moreover, because "we accept the trial court's findings on disputed facts and witness credibility,"[10] a determination of voluntariness must be upheld unless it is clearly erroneous.[11] Nevertheless, when "controlling facts are *not* in dispute, . . . such as those facts discernible from a videotape, our review is de novo."[12] Finally, we apply the legal principles to

---

[6] OCGA § 24-3-50; *see also State v. Lynch*, 286 Ga. 98, 99-100 (1) (686 SE2d 244) (2009); *Henry v. State*, 295 Ga. App. 758, 759 (673 SE2d 120) (2009).

[7] *See, e.g., Lynch*, 286 Ga. at 99; *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008).

[8] *See, e.g., Lynch*, 286 Ga. at 100; *Jackson v. State*, 280 Ga. App. 716, 720 (2) (634 SE2d 846) (2006).

[9] *Lynch*, 286 Ga. at 99 (citation and punctuation omitted).

[10] *Henry*, 295 Ga. App. at 761; *see also Lyons v. State*, 244 Ga. App. 658, 658-59 (535 SE2d 841) (2000) (noting that because the trial court sits as the trier of fact, "its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them").

[11] *See, e.g., Lynch*, 286 Ga. at 99 (1); *Jackson*, 280 Ga. App. at 720 (2).

[12] *Lyons*, 244 Ga. App. at 659 (citation omitted) (emphasis supplied); *see Vergara*, 283 Ga. at 178 (1) (same); *see also State v. Roberts*, 273 Ga. 514, 514-15 (1) (543 SE2d 725) (2001) ("[T]he videotape . . . is demonstrative objective proof of the circumstances surrounding [the] inculpatory statement. Therefore, the question presented for resolution is whether the trial court erred in its legal conclusion that, under this undisputed evidence, [the accused's] confession was inadmissible because it did not satisfy the requirements of OCGA § 24-3-50."),

the facts independently.[13] With the foregoing in mind, we now consider the State's enumerations of error.

1. On appeal, the State argues that there is no evidence that the investigators suggested to Brown that the possibility of arrest was contingent upon what was said in the interview. Brown contends, and the trial court agreed, that the investigators gave him the impression at the beginning of the interview that he would not face criminal charges when the investigators told Brown he would go home after the interview regardless of what he told them. Specifically, Brown claims that his statements to investigators, both before and after the reading of his *Miranda* rights, were involuntary and inadmissible. We agree with the State that, when considered in the totality of the circumstances, the statements by investigators did not suggest that Brown would *never* be arrested or charged regardless of what he said during the interview.

The reward of a lighter sentence is generally what is meant by the phrase "hope of benefit," as used in OCGA § 24-3-50.[14] When an accused is made a promise concerning a collateral benefit, however, his subsequent confession is not excludable.[15] Indeed, we have previously held that statements referring to an accused going home after an interview are collateral promises that in no way relate to the sentence or charges facing the suspect.[16] Additionally, we have held

---

*overruled on other grounds by Vergara*, 283 Ga. at 177-78 (1).

[13] *See, e.g.*, *Vergara*, 283 Ga. at 177; *Henry*, 295 Ga. App. at 761.

[14] *See, e.g.*, *Jackson*, 280 Ga. App. at 720 (2); *Jones v. State*, 270 Ga. App. 233, 237 (1) (b) (606 SE2d 288) (2004); *see also Canty v. State*, 286 Ga. 608, 610-11 (690 SE2d 609) (2010) (holding confession involuntary when accused told that confession could result in a shorter term); *State v. Ritter*, 268 Ga. 108, 110 (1) (485 SE2d 492) (1997) (holding that officer's misrepresentation that victim was still alive was an implied promise that accused would not be charged with murder, giving "the hope that he faced a lighter possible criminal penalty than he actually was facing" (footnote omitted)).

[15] *See, e.g.*, *Boone v. State*, 293 Ga. App. 654, 657-58 (3) (667 SE2d 880) (2008) ("A promise not involving the sentence or charge at issue is one promising a collateral benefit, and such a promise does not make an otherwise admissible statement inadmissible."); *Jackson*, 280 Ga. App. at 720 (2) (noting that because "hope of benefit" generally means the reward of a lighter sentence, "confessions made under a promise of collateral benefit are not for that reason excludable" (citation, footnote and punctuation omitted)); *see also* OCGA § 24-3-51 ("The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.").

[16] *See Brown v. State*, 278 Ga. 724, 727-28 (3) (609 SE2d 312) (2004) (holding that repeated statements that accused would "soon be free to go" was collateral); *In the Interest of D. T.*, 294 Ga. App. 486, 489 (2) (669 SE2d 471) (2008) (holding that officer's promise that he "would see about getting the defendant home once defendant made a statement" was collateral); *Jones*, 270 Ga. App. at 237 (1) (b) (holding that allowing accused to go home after confession and stating that "[w]hen you leave out of here and you tell us about it, you're going to feel a lot better," was collateral); *Smith v. State*, 269 Ga. App. 133, 140 (3) (603 SE2d 445) (2004) (holding that, after accused told detective that he "just wanted to go home," detective's reply of "let's straighten this out and we'll see about getting you home" was collateral); *accord Light v. State*, 20 So3d 939, 940-41 (Fla. Dist. Ct. App. 2009) (officer's repeated statements that

that a hope of benefit may be dispelled by a statement that an officer has no influence over an accused's possible punishment.[17]

And here, the videotaped confession shows that Brown inquired as to what would happen to him, hypothetically, if he had done what the child alleged. One of the investigators responded, "First of all, . . . I'm not gonna sit here and tell you what a judge is going to do . . . I can't tell you what the penalties are because I'm not the judge. And I'm not even going to go out on that limb." The second investigator then said, "I mean, we can't sit here and promise you anything or tell you anything. . . . What I can tell you is . . . when you leave here, no matter what you tell me or say . . . you're going home." The second investigator continued to tell Brown that "if you tell me it happened, I'm not going to snatch you up, place you in handcuffs and drag you back there in the back . . . I'm not going to ruin that relationship by snatching you up." The first investigator then said, "Unless you killed somebody. Now if you killed somebody, you ain't going home."

The statement that Brown would not be arrested on the spot was collateral and clearly not the type of "hope of benefit" contemplated by OCGA § 24-3-50. But even assuming that this statement was *not* collateral, any hope of benefit was clearly dispelled by the officers' assertions that they had no control over what would ultimately happen to Brown. Furthermore, throughout the interview—before, during, and after his confession—Brown expressed an understanding that there *would* be consequences for his actions. Indeed, shortly after the investigating officers made the allegedly confession-inducing statements, Brown continued to deny that he had done anything to the child. The investigators then asked Brown what he thought should happen to somebody who did what was alleged, and Brown speculated that such a perpetrator would face jail time, probation, and rehabilitation. Additionally, when investigators said "[i]t's not going away," Brown said that he understood that was the

suspect could go home after interview no matter what suspect said did not mean suspect would not be arrested or prosecuted). *But cf. Richardson v. State*, 265 Ga. App. 711, 712, 713-16 (1) (595 SE2d 565) (2004) (holding that, after accused specifically asked if officer planned to arrest, statement that officer would "see how the interview went before a decision was made as to whether or not [accused] would be taken into custody" was improper when officer already had warrants and intended to arrest).

[17] *See Valentine v. State*, 289 Ga. App. 60, 62 (2) (656 SE2d 208) (2007) ("Even if we assume that [the] statements offer[ed] the hope of a lighter sentence, . . . . any hope of benefit was dispelled by the officer's statement that he had no influence over [the accused's] possible punishment."); *see also Stephens v. State*, 164 Ga. App. 398, 399 (3) (297 SE2d 90) (1982) (holding that officer's statement that accused was "helping himself by telling the truth, that judges love to hear that defendants helped the police, and that . . . it also showed that he cooperated . . . along with repeated statements that the officer could not promise any help" did not fall within "hope of benefit").

case and that there would be consequences for his actions. One investigator even said that he would not tell Brown that there would *not* be consequences for his actions.

And when Brown eventually confessed to placing the child's penis in his mouth, the investigator immediately responded, "You know I can't let you get up and walk out of here with what you just told me," and then proceeded to recite to Brown his *Miranda* rights. Brown acknowledged his understanding of the investigator's statements and at no point attempted to retract his confession, instead repeatedly saying, "I'm screwed." Brown also repeatedly attempted to continue speaking with the officer who maintained that he could not speak to Brown any further unless and until Brown first signed the *Miranda* waiver form. Moreover, throughout the significant amount of time between his first confession and his signing of the *Miranda* waiver, Brown indicated several times that he knew he was going to jail. Brown also asked the investigator what would happen after the interview, and the investigator responded that Brown would be charged, booked, and go to court; but the investigator also advised that he could not tell Brown whether he would ultimately go to prison. Brown also inquired as to the possibility of posting a bond, and the investigator advised him that he would have no say as to whether Brown received a bond or would instead go to jail. Finally, Brown stated that he knew he would be required to register with the State as a sex offender. After this conversation transpired and Brown signed the *Miranda* waiver, he again confessed to molesting the child.

Given the foregoing, we cannot agree with the trial court that the investigators' statements that Brown would go home after the interview offered him a "hope of benefit" that would otherwise render his confession inadmissible. Here, immediately before telling Brown that he would go home after the interview, the officers said that they could not promise him what a judge would do if he confessed to molesting the child. Morever, Brown repeatedly expressed a keen understanding that there would indeed be serious consequences for his actions. Accordingly, as indicated by his own statements in the interview, Brown could not have reasonably understood the investigators' statements to mean that he would *never* be charged or arrested for his crimes.[18]

2. The State also argues that, considering the totality of the circumstances, "it cannot be said that any statement made by [the]

---

[18] *See In the Interest of D. T.*, 294 Ga. App. at 489 (2); *Brown*, 278 Ga. at 727-28 (3); *Jones*, 270 Ga. App. at 237 (1); *Smith*, 269 Ga. App. at 140 (3); *accord Light*, 20 So3d at 940 ("[T]he trial court did not err in holding it was unreasonable for [the suspect] to take [the statement that he could go home no matter what he said] as a promise of no prosecution.").

investigators induced [Brown] to make a false statement." In this respect, we note that the trial court's order omits any analysis of the totality of the circumstances. Following our de novo review of the videotaped confession,[19] we agree with the State that, even if the complained-of statements did constitute an improper "hope of benefit," they, nevertheless, when viewed in the totality of the circumstances, did not *actually induce* Brown's confession.[20]

The voluntariness of a confession ultimately turns on "the effect of the totality of the circumstances on the defendant's will," and this analysis "requires an assessment of human motivation and behavior."[21] The Supreme Court of the United States has held that, in making this assessment, the following characteristics of the accused and the details of the interrogation are to be considered[22]: the accused's youth; the accused's lack of education; the accused's low intelligence; the lack of any advice regarding the accused's constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment.[23] And

---

[19] *See Vergara*, 283 Ga. at 178 (1); *Lyons*, 244 Ga. App. at 659.

[20] *See, e.g., Colorado v. Connelly*, 479 U. S. 157, 163-67 (II) (107 SC 515, 93 LE2d 473) (1986) ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." (footnote omitted)); *United States v. Prince*, 157 FSupp.2d 316, 328-29 (3) (III) (B) (D. Del. 2001) ("[T]he voluntariness of a statement does not depend solely upon whether it was made in response to promises . . . . [T]he key inquiry is whether the alleged promise actually induced the statement that the defendant seeks to suppress." (citation omitted)); *Ex Parte Gaddy*, 698 So2d 1150, 1154 (Ala. 1997) ("One statement by an interrogator can render a confession involuntary, if that statement actually induces or causes the defendant to confess." (citation omitted)); *Craig v. State*, 719 So2d 274, 277 (I) (Ala. Crim. App. 1998) (" 'The key to our analysis of promises or inducements is to determine whether those promises or inducements actually caused the confession, not just whether the promises or inducements were made by the officer.' " (quoting *Ex Parte Gaddy*, 698 So2d at 1154)); *Blake v. State*, 972 So2d 839, 844 (II) (A) (Fla. 2007) ("[A] promise alone is not sufficient to render a confession involuntary. There must also be a causal connection between the police conduct and the confession." (citation omitted)); *Light*, 20 So3d at 941 (requiring a clear causal connection between the investigator's statement and the accused's confession); *Stokes v. State*, 423 A2d 552, 555 (Md. 1980) ("[T]here must also be sufficient evidence that the confession was actually induced by a threat or promise[.]" (citation and emphasis omitted)); *State v. Unga*, 196 P3d 645, 102 (10) (Wash. 2008) ("[T]here must be a direct causal relationship between the promise and the confession." (citation omitted)).

[21] *United States v. Morris*, 491 FSupp. 226, 230 (S.D. Ga. 1980) (citation and punctuation omitted).

[22] *See Schneckloth v. Bustamonte*, 412 U. S. 218, 226 (II) (A) (93 SC 2041, 36 LE2d 854) (1973).

[23] *Id.* (citing numerous prior cases and noting that "[t]he significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances"); *see also Inman v. State*, 295 Ga. App. 461, 462 (1) (671 SE2d 921) (2009) (analyzing accused's independent knowledge of constitutional rights, the lack of threats by law enforcement, accused's mental state, accused's understanding of rights, the length of interview, lack of physical punishment, accused's level of education, and accused's intelligence level); *State v. Johnson*, 273 Ga. App. 324, 326 (615 SE2d 163) (2005) ("[C]ourts must resolve questions

while our case law requires a specific nine-factor analysis only in cases of juvenile confessions,[24] the Supreme Court of Georgia has acknowledged that "some of those factors are often relevant in determining whether an adult's confession is voluntary under the totality of the circumstances."[25]

And here, the record shows that Brown was familiar with his constitutional rights; was 19 years old at the time of the interview; was a high school graduate (who had previously taken criminal-justice classes); was aware of the allegations against him; was not in custody when he initially confessed;[26] was not yet indicted; was not yet subject to any arrest warrants; and was questioned for approximately two hours but confessed after less than one hour. Additionally, a large portion of the interview consisted of the investigator explaining that he could no longer talk to Brown unless and until he signed a *Miranda* waiver form.

Furthermore, after the investigators told Brown that he would go home, Brown *repeatedly* denied—for the next five minutes—ever touching the child or placing the child's penis in his mouth. The investigators then explained to Brown that there are people who have problems and that it was their job to help those people before their problems got out of control. The investigators also told Brown that they wanted to help him so that his problems would not escalate. Nevertheless, Brown continued his repeated denials that he had done anything to the child, even saying that he had vomited when informed of the allegations.

Thereafter, Brown spontaneously told the investigators that there had been instances when the child would try to kiss him. The investigators immediately seized on this statement, asking Brown if the child would "come onto him," and advising Brown that he should tell them if the child wanted to be touched and whether Brown was only acting on the child's request. Brown's gradual confession started when, at this prompting, he said, "Actually, now that you mention it—saying it like that, there was actually one time when he wanted me to [touch his penis], and I told him no." The investigators

---

regarding the voluntariness of a confession on a case by case basis." (footnote omitted)); *Pless v. State*, 142 Ga. App. 594, 597 (236 SE2d 842) (1977) (noting that "legality, duration, and conditions of detention are relevant" to determining voluntariness).

[24] *See Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976) (adopting the nine-factor test used by the United States Court of Appeals for the Fifth Circuit). The nine factors are as follows: (1) accused's age; (2) accused's education level; (3) accused's knowledge of the charges and his constitutional rights; (4) whether accused was allowed to communicate with others; (5) whether interrogation comes before or after formal charges; (6) interrogation methods; (7) length of interrogation; (8) whether accused refused to give prior statements; and (9) whether accused later repudiated statement. *Id.*

[25] *Vergara*, 283 Ga. at 177-78 (1).

[26] *See* discussion *supra*.

then responded to this statement by telling Brown that if the child wanted him to touch his penis, this was not the time to lie about it and that Brown would feel better once he told them what had actually happened. Brown then finally admitted to touching the child on one occasion, alleging that the child asked him to do so.

A conversation then ensued between the investigators and Brown, with the investigators telling Brown that the truth would let him move on with his life, that sometimes good people make bad decisions, that there is help for people who make bad decisions, and other statements along those lines. Nevertheless, throughout the course of this exchange, Brown continued to deny the totality of what had happened. The investigators told Brown that this interview was his chance to tell his side of the story, but Brown responded that his parents would kill him if he confessed. Brown then asked whether the child would need counseling, and the investigators explained that they needed closure for both Brown and the child. This was yet another turning point in the interview, when Brown broke down into tears and said that he knew the child would hate him. Brown then said that the child had "wanted someone to play with his wee-wee," and Brown admitted that he had placed the child's penis in his mouth one time.

For the next 15 to 20 minutes, Brown's confession continued, and he voluntarily spoke to the investigator after the reading and waiver of his *Miranda* rights. At no time during the course of this interview did Brown attempt to retract his confession or express anything remotely suggesting that his confession was in any way induced by the officers' earlier statements that he would be able to go home no matter what he said to them during the interview.

Given the foregoing circumstances, we find that Brown made his incriminatory statements voluntarily and that he was *not* induced by the officers' statements that he would be allowed to go home after the interview no matter what he said. Indeed, Brown's change in demeanor began only after the investigators asked whether he had merely responded to the child's desire to be touched, and it was this line of questioning and the emotional appeals made by the investigators to Brown—to clear his conscience and bring closure to this matter—that ultimately induced the confession that followed.[27]

---

[27] *See Stringer v. State*, 285 Ga. 842, 845 (3) (684 SE2d 590) (2009) (holding that officer's admonition to tell the truth by saying "I'm trying to help you" did not require exclusion of confession); *Cooper v. State*, 256 Ga. 234, 235 (2) (347 SE2d 553) (1986) (holding that officer's statement that he wanted to help accused did not render confession involuntary); *Caffo v. State*, 247 Ga. 751, 756 (3) (279 SE2d 678) (1981) (holding that "advice from officer that the suspect will feel better if he tells the truth" and admonition that "it is always best to tell the truth" did not render confession inadmissible (citation and punctuation omitted)); *Dexter v. State*, 293 Ga. App. 388, 391-92 (667 SE2d 172) (2008) ("Even an emotional appeal does not

Additionally, as detailed in Division 1, supra, Brown repeatedly asked the officers questions and made statements to them about the consequences he would face if he admitted to molesting the child—a strong indication that he fully understood the ramifications of his actions and that he was in no way under the impression that making an inculpatory statement would spare him from arrest, prosecution, or jail time. Finally, Brown at no point attempted to repudiate his statements, even after an investigator told Brown that he would not be able to leave. Indeed, upon being advised that he would not be allowed to leave the premises, Brown indicated that he knew going home was no longer an option.

In sum, even if the complained-of statements arguably constituted an improper "hope of benefit," we cannot say—after considering the totality of the circumstances surrounding those statements—that they *actually induced* Brown to make his confession.[28]

Accordingly, for all of the foregoing reasons, we reverse the trial court's contrary holding.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 16, 2011 — 

*Richard A. Mallard, District Attorney, Brian A. Deal, Assistant District Attorney*, for appellant.

*Jackson & Schiavone, George T. Jackson*, for appellee.

---

make a confession involuntary as long as the means employed are not calculated to procure an untrue statement." (footnote omitted)).

[28] *See supra* note 20.