**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 2, 2013**

# In the Court of Appeals of Georgia

A13A1631. STATE v. MUNOZ.

DILLARD, Judge.

The State appeals the trial court's order suppressing Miguel Munoz's custodial statement,[1] arguing that the trial court erred in finding that it was not freely and voluntarily given. For the reasons set forth *infra*, we agree and reverse.

The facts pertinent to this appeal are undisputed. In December 2011, a detective with the Alpharetta Police Department began investigating a report filed by 15-year-old P. G.'s mother that P. G. had been forcibly raped[2] by 21-year-old Munoz after P.

---

[1] *See* OCGA § 5-7-1 (a) (4) ("An appeal may be taken by and on behalf of the State of Georgia from the superior courts . . . [f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized . . . .").

[2] *See* OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will.").

G. and several friends consumed alcohol at Munoz's apartment. After interviewing P. G. and several other witnesses to the evening in question, the detective received information that P. G. and Munoz may have had sex, but that P. G.'s allegations of rape may have arisen only after her parents learned about it.

The detective took Munoz into custody and conducted a recorded interview. Prior to commencing the interview, Munoz was given and expressly waived his *Miranda*[3] rights. The detective then began questioning Munoz about the reported incident and requested his version of the night at issue. When Munoz described a sequence of events that omitted any physical contact with P. G., this dialogue ensued:

> **Detective:** Let me tell you what . . . I gave you the respect to come in here and be straight up and honest with me about what happened. But right now I have to call the bullshit card. I don't know if you know this but I already talked to everyone that was in your house that night and what you're telling me is very different from what they were saying. So, I want you to tell me exactly what happened with you and [P.G.] And I'm not even going to bullshit with you. I'm

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

2

going to tell you this, I don't know if you know but you probably know, she went to the doctor the next day. She had a complete vaginal exam. We have DNA.[4] We have all the doctor's tests . . . I already know you guys had sex. I'm not worried about that. I don't care . . . . What I care about is that I have a fifteen-year-old girl who's telling everyone she was raped, okay? And I have to make sure that that wasn't rape because there is a huge difference between forcing someone to have sex with you and someone that wants to have sex with you.

**Detective:** You see the difference?

**Munoz:** Yes.

---

[4] It is undisputed that, although P. G. did eventually go to the doctor, it was not the day following the incident and no DNA evidence was gathered. *See Riley v. State*, 278 Ga. 677, 680 (3) (604 SE2d 488) (2004) ("The officers' bluff that scientific evidence would tell them exactly what happened in the trailer also did not make [the defendant's] statement inadmissible, even considering that they admitted at the pretrial hearing that they had overstated their investigative capability."); *Frazier v. Cupp*, 394 U.S. 731, 739 (89 SCt 1420, 22 LE2d 684) (1969) ("The fact that the police misrepresented [witness] statements . . . , while relevant, [is] insufficient in our view to make this otherwise voluntary confession inadmissible. These cases must be decided by viewing the 'totality of the circumstances' . . . ."); *United States v. Harris*, 914 F2d 927, 933 (7th Cir. 1990) ("[I]t is well settled that police may use small deceptions while interrogating witnesses.").

**Detective:** You see the repercussions it can have on your life?

**Munoz:** Yes.

**Detective:** Okay. So, now start talking.

**Munoz:** I did not have sex with her . . .

. . .

**Detective:** I'm calling the bullshit card . . . . The only reason I am here with you instead of just throwing you in the jail is because I was to get your side. And I'm telling you she went to the doctor the next day, okay? So, I know she had sex. She knows she had sex, she knows her body. Everybody in that house said you had sex with her. But now that her father knows about it, she's saying it was rape. And that's my problem.

**Munoz:** I understand your problem.

. . .

**Detective:** So, if you come in here and be straight up with me and tell me what happened . . . . If you tell me, "Look, she was drunk, I was drunk, we were smoking, we were horny—"

**Munoz:** (Interjecting) And then, what, I get thrown in jail? And then I

4

get charged for having sex with a minor?

**Detective:** Listen to me. I'm here to work with you, okay? I'm here to work with you. I wouldn't just waste my time. I'd just throw you in jail, okay?

**Munoz:** Yeah, I know.

**Detective:** You tell me that she wanted it or she actually forced you to have sex—anything. Cause I already know that she had sex, okay? So, you're telling me "I haven't touched her, she's 15." I know that wasn't crossing your mind when you were drunk . . . but you giving me the truth and working with me can get you a long way, you sitting here and saying I didn't do nothing—

**Munoz:** (Interjecting) No, I understand—

**Detective:** (Continuing)—That paints a totally different picture.

**Officer 2:** And there is going to be some scientific evidence at the end of the day . . . you can't make that up.

**Munoz:** Yeah, DNA is DNA . . . . Well, look at it from my point of view. Even if I admit it, saying, "Oh yeah, I had sex with her," there goes my school, my job. There goes everything. Don't you get—

5

**Detective:** (Interjecting) Not necessarily.

**Munoz:** (Continuing) registered—don't you get like registered for having sex with a minor?

**Detective:** Not necessarily. That's why I'm here with you.

**Munoz:** Yeah, but let's be honest.

**Detective:** We are honest.

**Munoz:** Yeah, but who knows you're not just saying that so I would tell the truth. Who's to say—not calling you a liar, not saying you're not credible. You're not arrested. You're not on the warrant.

**Detective:** I already know the truth . . . . But the only reason why I am here is because I want your side, okay? I don't think you're still understanding this. Because this is a whole different ball game if I present the case to the D.A. saying, "This guy did not cooperate with me. She said she was raped. Everybody saw her in this room. The doctor knows she had sex. Her parents know she had sex, everybody at school saw how shocked she was." Okay? All of that against you . . . and comparing to, "Hey, I talked to the guy. He was really honest with me, he told me straight up, ya

6

know—"

**Munoz:** (Interjecting) Alright—

**Detective:** (Continuing) He made a mistake—

**Munoz:** (Interjecting)—Alright. Alright.

**Detective:** (Continuing) Ya know, that she wanted it—

**Munoz:** (Interjecting) I'm gonna do the right thing—

**Detective:** (Continuing) he wanted it—

**Munoz:** (Interrupting) I'm gonna do the right thing. I'm gonna do the right thing. I'll tell you everything I have. I promise. Just like I said, you have to see my point of view. I don't—it's hard. I don't—this isn't like I robbed a liquor store, or I stole a candy bar from a candy store, or something like that. This isn't, oh, a traffic ticket, pulled over. *This is something, like serious, like you were saying before. This is like jail for a long time, registered as a rapist, or it's like that.*

**Detective:** *If it gets to that, yes.*

. . .

**Munoz:** So, everything—I mean, everything you're assuming is true. I had

7

sex with [P.G.]

Munoz then proceeded to detail the night in question, after which the interview proceeded as follows:

**Detective:** I can tell you that the fact that you did come to your senses and talk with us and be honest with us that—and being honest with us, that definitely helps. Because now I'm the one making the phone call and I can say, "Hey, this guy's cool. He was straight up with me. He told me everything. He told me everything I wanted to know." You know, "Take it easy on him." Alright, I can't promise you, you know—

**Munoz:** (interrupting) Oh, I know. . . . To be honest, I know something is gonna happen. How extreme it's gonna be and how light it's gonna be is another question. But I know something is gonna happen and I take responsibility for my actions . . . .

The interview ended shortly thereafter.

Munoz was subsequently charged with statutory rape,[5] child molestation,[6] and contributing to the delinquency of a minor.[7] He thereafter filed a motion to suppress his statement, arguing that it was not freely and voluntarily given. Following a hearing, the trial court granted the motion after concluding that the statement was induced by "a threat that if [Munoz] denied having sexual intercourse with [P. G.] he would be charged with forcible rape, and a promise that if he admitted to having sexual intercourse with . . . her he would not be charged with forcible rape, that he would not be thrown in jail[,] and that he would not have to register as a sex offender." This appeal follows.

The crux of this appeal is whether Munoz's confession was voluntary or whether it was instead induced by a "hope of benefit" promised by the State. At the

_____

[5] *See* OCGA § 16-6-3 (a) ("A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse . . . . ).

[6] *See* OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.").

[7] *See* OCGA § 16-12-1 (b) (1) ("A person commits the offense of contributing to the delinquency, unruliness, or deprivation of a minor when such person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing a delinquent act.").

9

outset, we note that incriminating statements are only admissible if "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[8] Thus, to overcome suppression, the State must show that (1) the suspect was not presented with the "slightest hope of benefit," and (2) even if a "hope of benefit" was presented to the criminal defendant by the State, the suspect's incriminating statements were not *actually induced* by this "hope of benefit," such that his or her confession was rendered involuntary as a matter of law.[9]

At a motion-to-suppress hearing, the State must demonstrate the voluntariness of a confession by a preponderance of the evidence, and the trial court's determination must be based on the totality of the circumstances.[10] The trial court's ruling as to voluntariness "must be upheld by the appellate court unless the decision is clearly erroneous."[11] And when reviewing the trial court's decision, we must construe the evidence most favorably to upholding the trial court's findings and

---

[8] OCGA § 24-3-50; *see also State v. Lynch*, 286 Ga. 98, 99-100 (1) (686 SE2d 244) (2009); *State v. Brown*, 308 Ga. App. 480, 482 (708 SE2d 63) (2011).

[9] *Brown*, 308 Ga. App. at 482.

[10] *See Lynch*, 286 Ga. at 99-100; *Brown*, 308 Ga. App. at 482.

[11] *State v. Ritter*, 268 Ga. 108, 108 (485 SE2d 492) (1997).

judgment.[12] Nevertheless, when the pertinent facts are not in dispute, our review is *de novo,*[13] and we apply the legal principles to the facts independently.[14] With these guiding principles in mind, we will now address the State's sole enumeration of error.

The State argues that the trial court erred in suppressing Munoz's statement, which it contends was not actually induced by threat or hope of benefit, but was instead freely and voluntarily given. Because we agree with the State, we reverse.

It is well established that "only voluntary incriminating statements are admissible against the accused at trial."[15] A statement is voluntary only if it was not actually induced by the "remotest fear of injury"[16] or by the "slightest hope of

---

[12] *See Brown*, 308 Ga. App. at 482; *Dunn v. State*, 289 Ga. App. 585, 587 (1) (b) n.1 (657 SE2d 649) (2008).

[13] *See Brown v. State*, 290 Ga. 865, 868 (2) (a) (725 SE2d 320) (2012) ("There is no dispute about what took place during the police interview in question, since it was recorded with both video and audio.").

[14] *See Brown*, 308 Ga. App. at 482-83.

[15] *Ritter*, 268 Ga. at 109 (1); *see Edenfield v. State*, ___ Ga. ___ , ___ (2) (744 SE2d 738) (2013).

[16] Former OCGA § 24-3-50, repealed by Ga. Laws 2011, Act 52, § 2 (effective Jan. 1, 2013). Coinciding with the effective date of Georgia's new evidence code, OCGA § 24-3-50 was replaced without change by OCGA § 24-8-824.

11

benefit."[17] Generally, "fear of injury" in this context refers to "physical or mental torture or coercion by threats."[18] And the "slightest hope of benefit" has been interpreted to focus on "promises related to reduced criminal punishment—a shorter sentence, lesser charges, or no charges at all."[19] When determining whether a confession was freely given, we must look to the totality of the circumstances and the burden is on the State to prove by a preponderance of the evidence that a statement was, in fact, voluntary.[20]

Significantly, however, the mere fact that an officer promises something to a person suspected of a crime in exchange for that person's speaking about the crime "does not automatically render inadmissible any statement as a result of that promise."[21] Rather, the key inquiry is whether "the alleged promise *actually induced*

---

[17] *Id.*

[18] *Thomas v. State*, 317 Ga. App. 729, 731 (732 SE2d 559) (2012) (punctuation omitted).

[19] *Brown*, 290 Ga. at 868-69 (2) (b).

[20] *Edenfield*, ___ Ga. at ___ (2).

[21] *Pulley v. State*, 291 Ga. 330, 332 (2) (729 SE2d 338) (2012) (punctuation omitted); *see Edenfield*, __ Ga. at __ (2).

the statement that [the defendant] seeks to suppress."[22] Indeed, in order for a promise to render a confession involuntary, "[t]here must also be a *causal connection* between the police conduct and the confession."[23]

Here, the trial court identified both a threat and a hope of benefit that it concluded wrongfully induced Munoz's statement and rendered it involuntary. Specifically, the trial court inferred from the colloquy between Munoz and the detective that Munoz was implicitly threatened that his failure to admit to sexual intercourse with P. G. would result in him being charged with forcible rape. And the trial court likewise construed the exchange as "a promise that if he admitted to having sexual intercourse with [P. G.], he would not be charged with forcible rape, that he would not be thrown in jail[,] and that he would not have to register as a sex offender." We will address each of these findings in turn.

---

[22] *Pulley,* 291 Ga. at 332 (2) (punctuation omitted) (emphasis supplied); *see Brown*, 308 Ga. App. at 486 (2) n.20.

[23] *Pulley*, 291 Ga. at 333 (2) (punctuation omitted); *see Brown*, 308 Ga. App. at 486 (2).

1. With respect to the implicit threat that Munoz was potentially facing a charge of forcible rape, the detective expressed nothing more than a truism.[24] The crime was originally reported as such by P. G.'s mother, and it is apparent that throughout the detective's investigation up to and including her interview with Munoz, the detective was attempting to determine whether the evidence gathered supported a claim of forcible, as opposed to statutory, rape.[25] Moreover, to the extent that the detective encouraged Munoz to present his version of events so as to dispel allegations that he forcibly raped P. G., the questioning was not improper. It is well

---

[24] *See Cantrell v. State*, 299 Ga. App. 746, 749 (1) (683 SE2d 676) (2009) ("A statement by police that makes the defendant aware of the potential legal consequences is in the nature of a mere truism and does not constitute a threat of injury or promise of benefit within the meaning of OCGA § 24-3-50." (punctuation omitted)); *Rollinson v. State,* 276 Ga.App. 375, 379 (1) (d) (623 SE2d 211) (2005) ("[T]he fact that [the defendant] was told he would be arrested if he refused to talk to the police officers does not amount to coercion making his statements inadmissible."); *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000) (holding that interrogating officer's statements to suspect that he was in "big trouble" and that the offense alleged was punishable by 20 years confinement were mere truisms and not threats).

[25] *Compare* OCGA § 16-6-1 (b) ("A person convicted of the offense of rape shall be punished by death, by imprisonment for life without parole, by imprisonment for life, or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life.") *with* OCGA § 16-6-3 (b) ("[A] person convicted of the offense of statutory rape shall be punished by imprisonment for not less than one nor more than 20 years.").

14

established that "admonitions to tell the truth will not invalidate a confession,"[26] nor will assurances that the investigator will make a suspect's cooperation known to the prosecution and it may help him or her.[27]

2. We further disagree with the conclusion that Munoz's statement was actually induced by a hope of benefit. Accepting the inferences drawn by the trial court that the detective promised Munoz "that he would not be charged with forcible rape, that he would not be thrown in jail and that he would not have to register as a sex offender" if he confessed to having sex with P. G., the recorded interview shows unequivocally that Munoz's statement, nevertheless, was not actually induced by any such belief. Indeed, immediately before his admission, Munoz expressly acknowledged that his statement would result in him being sent to "jail for a long time [and being] registered as a rapist," and the detective conceded, "[i]f it gets to

---

[26] *Pittman v. State*, 277 Ga. 475, 478 (2) (592 SE2d 72) (2004); *see Askea v. State*, 153 Ga. App. 849, 851 (3) (267 SE2d 279) (1980) ("A comment by an interrogating officer that it is always better to tell the truth is not such an inducement as to invalidate a confession."); *see also Edenfield*, __ Ga. at __ (2).

[27] *Lyles v. State*, 221 Ga. App. 560, 561 (1) (472 SE2d 132) (1996) (rejecting defendant's assertion "that the trial court should have suppressed his confession because the investigator told defendant that if he cooperated, the investigator would let the district attorney know of his cooperation and it might help him"); *see also Leigh v. State*, 223 Ga. App. 726, 727 (1) (478 SE2d 905) (1996).

15

that, yes." And immediately after the confession, the detective informed Munoz that she could make no promises with regard to the outcome of the case, and Munoz responded "I know" before expressing that he knew "something [was] gonna happen." Thus, even if the statements made by the detective "constitute[d] an improper hope of benefit, they nevertheless, when viewed in the totality of the circumstances, did not *actually induce* [Munoz's] confession."[28] It follows, then, that the trial court erred in suppressing Munoz's statement.

*Judgment reversed. Andrews, P. J., concurs. McMillian, J., concurs fully in Division 1 and in judgment only as to Division 2.*

---

[28] *Pulley*, 291 Ga. at 333 (2) (punctuation omitted) (holding improper hope of benefit by police chief did not induce defendant's confession when defendant admitted immediately prior to making the statement that he "did not care" if the interrogators were going to help him or not and "he was going to tell them what happened anyway"); *see Brown*, 308 Ga. App. at 486 (2) (holding that investigator's promise that defendant would be going home regardless of what he said during the interview did not render his subsequent confession inadmissible in part because, under the totality of the circumstances, it was apparent that defendant knew and understood that not to be true).